## VINSON *v.* FLYNN.

### Opinion delivered November 27, 1897.

LANDLORD AND TENANT—WRONGFUL EJECTION—REMEDY.—Where a tenant in possession after expiration of his lease is ejected by the landlord without unnecessary force, his only civil remedy is an action of forcible entry and detainer. (Page 456.)

SAME—ESTOPPEL.—A tenant in possession is estopped to dispute his landlord's title to any part of the demised premises, without first surrendering possession. (Page 459.)

MALICIOUS PROSECUTION—JURISDICTION.—An action for malicious prosecution will not lie if the subject-matter of the prosecution was without the jurisdiction of the court in which it was instituted and continued. (Page 460.)

JUSTICE OF THE PEACE—JURISDICTION.—A justice of the peace has no jurisdiction of a suit brought by a landlord to recover possession of land unlawfully detained by his tenant, and a landlord taking possession under a writ of possession issued by a justice of the peace is in the same position as if he had taken possession without any writ. (Page 461.)

MALICIOUS PROSECUTION—PROBABLE CAUSE.—In an action for malicious prosecution it must be shown that there was no probable cause for such prosecution. (Page 461.)

LANDLORD—DAMAGES FOR EVICTING TENANT.—Where a landlord, in evicting a tenant and removing his goods from the demised premises, unnecessarily commits any injury to his person or goods, the tenant can recover the damages occasioned thereby. (Page 461.)

Appeal from Woodruff Circuit Court.

GRANT GREEN, JR., Special Judge.

*M. T. Sanders*, for appellant.

If there was any trespass, it was not malicious. There was no malicious prosecution by appellant. Both malice and want of probable cause must be present to constitute malicious prosecution. 1 Hilliard, Torts, 443. Appellee was a mere trespasser. 14 R. I. 119; 17 Atl. 921. After due notice to the tenant, the landlord has a right to enter peaceably and take possession. 59 Me. 598; 6 Allen, 76; 107 Mass. 406; 7 Metc. 147; 6 N. H. 11; 46 Ill. App. 496, 608; 27 *ib.* 384; 55 Ark. 360. The mistaken bringing of an action before a court which has no jurisdiction does not imply malice nor constitute a malicious prosecution. Compensation is the only rule by which damages for any unlawful force used in removing goods of appellee can be computed. Punitive damages are not recoverable, because the injury alleged is an indictable offense. 36 Ark. 268; 35 Ark. 387; Sand. H. Dig., § 1546; Const. Ark. art. 2, § 8; 4 Cush. 273; 53 N. H. 342; 2 N. E. 342; 70 Ill. 496: 71 Ill. 241; 4 B. Mon. 318; 23 Ga. 193; 7 Col. 541; 76 Ala. 176. Appellee could not dispute his landlord's title during the continued existence of the tenancy.

*P. R. Andrews and N. W. Norton*, for appellees.

The appellant's actions amounted to a malicious prosecution. 32 Ark. 166; 15 Pick. 321. It was competent for the court to award exemplary damages. 35 Ark. 494; 42 Ark. 328; 32 Ark. 176 and 177; 15 Ark. 458; 27 S. W. 66; 1 Suth. Damages, p. 738.

BATTLE, J. This action was instituted by Dock Flynn against T. C. Vinson to recover damages. He alleges that he

and his family were residing on a place known as the "Upp Place," as tenants of the defendant, and that the defendant un-lawfully and maliciously entered and ejected him and his family from the place, and threw his goods and chattels in the road, to his damage in the sum of $500.

The defendant denied these allegations, and alleged that the term of plaintiff as tenant had expired, and that he had refused, after legal notice and demand, to deliver possession of the place to his landlord, the defendant, and that his family and goods were removed from the place, by the constable of his township, in obedience to legal process, in a prudent and care-ful manner, without the slightest insult or injury to his family, or damage to his goods.

The facts, as shown by the evidence adduced in a trial before a jury, were substantially as follows: In September, 1892, Vin-son rented the "Upp Place" to Flynn for the term of two years. After the termination of the lease, in 1894, Vinson demanded possession of the place, in writing, and Flynn refused to comply with his demand.   He (Vinson) thereupon consulted two or more persons as to his right to sue for possession before a justice of the peace.   They advised him that he could not do so.   Not content with their advice, he applied to a justice of the peace, who, after an examination of the statutes, informed him that he had juris-diction in such cases.   He thereupon instituted an action against Flynn for the place before the justice of the peace, and sued out a writ therein, directed to the constable of the township, and commanding him, if the plaintiff gave security according to law, to deliver possession thereof to Vinson without delay. Vinson gave security as required, and the constable executed the writ in his presence, by turning Flynn and his family, con-sisting of a wife and three children (one a babe), out of the house upon the premises, and by removing their goods and chattels off the place.   This was in January, 1895.   The weather at the time and place was cold, and snow was upon the ground.   One witness testified that the goods and chattels were handled roughly by the constable, and were thereby injured, but others testified to the contrary.

Evidence was adduced in the trial, over the objections of the defendant, which tended to show that Flynn acquired,

before he was dispossessed, a claim of some kind to a part of the "Upp Place," the demised premises.

The court, over the objections of the defendant, instructed the jury as follows:

"2. If you find from the proof, by a preponderance, that the plaintiff was unlawfully dispossessed, you will find for the plaintiff.

"3. If you find for the plaintiff, he is either entitled to actual damages, or actual and punitive damages, according to whether you find the unlawful act was or was not done with malice. The damages you assess must not exceed the amount claimed in the complaint, in such an amount as may be sustained by the proof.

"4. Malice, in the sense in which the word is used in civil actions, is not confined to spite or hatred, but consists of a violation of law to the prejudice of the plaintiff, done willfully, or done with indifference as to whether it is right or wrong, and from being actuated by improper motives.

"5. A justice of the peace has no jurisdiction to issue writs of possession for real estate; and if he does issue such writ, it is void and without authority of law.

"6. The burden is upon the plaintiff to prove malice, but malice may be inferred from circumstances proved; and if you find from the evidence, by a preponderance, that the defendant acted from improper or indirect motives, and without authority of law, malice on the part of the defendant may be inferred.

"7. 'Punitive damages' means such an amount as it is called 'smart money,' or punishment for maliciously violating the legal rights of another; and if you find from the evidence that the defendant wantonly and maliciously, in utter disregard of the rights of the plaintiff, forcibly put him out of possession of the premises, then you may assess his damages at such sum as will be a punishment to him, and deter others from like actions. And in fixing the amount you may consider the vexation and injury to his feelings, his inconvenience, on account of the wrong done the plaintiff."

The plaintiff recovered a verdict and judgment against the defendant for $150, and the defendant appealed.

At common law no civil action can be maintained against

the landlord by the tenant for forcibly taking possession of his land, which constituted the demised premises, at the expiration of the tenancy, unless there was an excess of force, and then only for the excess.    There was no remedy by which he could be compelled to restore the possession'forcibly taken.    The law in this manner held forth strong temptations to the landlord to retake his land by force from the tenant refusing to deliver the same after the term of his lease had expired.    Such actions were calculated to provoke breaches of the peace.    To prevent this the statute was enacted which prohibits all persons from taking possession of land and detaining or holding the same,'except where an entry is given by law, and then only in a peaceable manner; and to protect the actual possession, not to determine the rights of property, provides the remedy of forcible entry and detainer. To restore the possession to him who has been turned out by force, as he held it before, until the right to the possession can be adjudicated, this remedy is designed; its object being, as said by Mr. Justice Eakin, "to prevent any and all persons, with or without title, from assuming to right themselves with strong hand after the feudal fashion, when peaceable possession cannot be obtained, and to compel them to the more pacific course of suits in court, where the weak and strong stand upon equal terms."    *Littell* v. *Grady*, 38 Ark. 584; *Hall* v. *Trucks*, *ib*. 257; *McGuire* v. *Cook*, 13 Ark. 448; *Anderson* v. *Mills*, 40 Ark. 192; *Johnson* v. *West*, 41 Ark. 535; *Logan* v. *Lee*, 53 Ark. 94.

But a party who was in possession of land without right, and has been turned out by the owner, has no civil remedies, except those provided by statute.    They are designed for the protection of his possession against force.    If he abandons them, and seeks to recover damages for a trespass, then he must rely on his right and claim to the property which has been injured.    The owner who has dispossessed him is then remitted to his title, and can use it to show that he has not been injured, and is not entitled to redress.

In New York the statutes at one time provided redress for dispossession by force, by an indictment for forcible entry and detainer.    In *People* v. *Leonard*, 11 Johns. 508, the court said: "This was a trial for a forcible entry and detainer.    The com-

plainant, on opening his case, proposed to confine his proof to his possession only; but the judge ruled that the complainant must prove in himself an estate in fee, or an estate for years, at least; that the title was in question, and that the complainant must give the like evidence of title as was required in ejectment. Admitting the complainant must give the like evidence of title as is required in ejectment, he offered to show what would have entitled him to recover in ejectment. If the lessor shows himself in the peaceable possession of land, and that he was forcibly dispossessed, it will be sufficient to entitle him to recover possession, and the defendant will not be permitted to set up title to defeat it. He must restore the party to his possession, wrongfully taken from him, in the first place. But, I apprehend, there was a mistake in saying the title was in question. In the case of *The People* v. *King* (2 Caines, 98), on a motion to quash a conviction, and for restitution, Kent, C. J., says: "We cannot decide on the title or rights of the parties. The complainant has nothing to do with that. He must give up the possession irregularly obtained, put the defendant in *statu quo*, and then proceed legally to the question of title. In the case of *The People* v. *Ruckel* (8 Johns. 468), Spencer, J., says, 'The court cannot, on this indictment, inquire into the title. Right or title to the property is no excuse. The statute was made to prevent persons from doing themselves right by force.' And the court, in giving its opinion, seems to assume that possession is enough for the complainant to show."

In a later case, *Jackson* v. *Farmer*, 9 Wend. 201, Mr. Justice Nelson, speaking for the court, said: "It was decided by this court in *Hyatt* v. *Wood*, 4 Johns. 150, and the same principle was again applied in *Ives* v. *Ives*, 13 *id*. 235, that a person having a legal right of entry on land may enter by force, and, though indictable for a breach of the peace at common law, or under the statute for a forcible entry and detainer, he is not liable to a private action for a trespass for damages at the suit of a person in possession without right, and who is thus turned out of possession. This position, apparently harsh, and tending to the public disturbance and individual conflict, is abundantly supported by authority, and must be considered the law of the land. * * * It was the abuse of this summary power to

right one's self by entry, where the right of entry existed, which gave rise to the numerous English statutes against forcible entry and detainer, of which our old act was substantially a copy, and in these acts, and the common-law remedy by indictment, are to be found the only protection of the property thus forcibly dispossessed. They punish criminally the force, and in some cases make restitution of the possession (*People* v. *Leonard*, 11 Johns. 509; *People* v. *Nelson*, 13 *id*. 340); but, so far as the civil remedy is concerned, there is none but what is afforded by those acts."

The same rule obtains when the statutory remedy for forcible ejection from land is the civil action of forcible entry and detainer, the principle in both cases being the same. *Krevet* v. *Meyer*, 24 Mo. 107; *Fuhr* v. *Dean*, 26 Mo. 116; 4 American Law Review, 429, *et seq.*, and cases cited.

In the case we have under consideration, appellee was a tenant of appellant. The term of the lease had expired. The former could not dispute the title of the latter to any part of the demised premises without surrendering possession. Before he could do so, he must surrender the whole, regardless of the title of his landlord. *Miller* v. *Turney*, 13 Ark. 385; *Clemm* v. *Wilcox*, 15 Ark. 102; *Bryan* v. *Winburn*, 43 *id*. 28; *Hershey* v. *Clark*, 27 *id*. 527; *Hughes* v. *Watt*, 28 *id*. 153. Yet the lower court instructed the jury that if they found from the evidence that appellant "wantonly and maliciously, in utter disregard of the rights of the" appellee, "forcibly put him out of the possession of the premises," then they might find for the appellee, and "assess his damages at such sum as will be a punishment to" appellant, "and deter others from like actions; and in fixing the amount" they might "consider the vexation and injury to his feelings and his inconvenience on account of the wrong done." This was an improper instruction in this action, and it was prejudicial to appellant.

The jury were told by the circuit court that "a justice of the peace has no jurisdiction to issue writs of possession for real estate, and if he does issue such writ, it is void and without authority;" and in this connection they were further instructed that if they found that the appellant wantonly and

maliciously, in utter disregard of his rights, forcibly evicted him, then they might award him exemplary damages. Taking these and all other instructions given, as a whole, we see no theory upon which they could have been based, unless it be there was evidence to show that appellant was guilty of a malicious prosecution. Upon that theory they should not have been given.

Hare and Wallace, in their notes to "American Leading Cases," after a review of the cases upon what is necessary to sustain an action for malicious prosecution, say: "The gist of the action above considered is the putting of legal process in force, regularly, for the mere purpose of vexation, annoyance, or injury; and the inconvenience or harm resulting, naturally or directly, from the suit or prosecution is the legal damage done upon which it is founded." *Munns* v. *Dupont*, 1 American Leading Cases (5 Ed.), 279. In *Sutton* v. *Johnstone*, 1 Term, 511, Lords Mansfield and Loughborough said: "The essential ground of this action is that a legal prosecution was carried on without a probable cause." That being true, the action cannot be maintained on account of a prosecution or suit the subject-matter of which was without the jurisdiction of the court in which it was instituted and continued. In that case all process issued, orders made, judgments rendered, and proceedings had would be absolutely void; and the action of the parties would stand as though unattended by any judicial act, process or proceeding, and completely divested of judicial authority, and the parties would be liable as they would have been had they acted without the authority, real or pretended, of any officer or court. We are aware that some courts have held that an action for a malicious prosecution before a court without jurisdiction of its subject-matter can be maintained, if the other essentials are shown, but we think the better opinion is that it cannot be sustained. *Bixby* v. *Brundige*, 2 Gray, 129; *Whiting* v. *Johnson*, 6 Gray, 246; *Painter* v. *Ives*, 4 Neb. 122; *Braveboy* v. *Cockfield*, 2 McMullan, 270, 273; *Turpin* v. *Remy*, 3 Blackford, 210, 216; *Marshall* v. *Betner*, 17 Ala. 832, 836; *Munns* v. *Dupont*, 1 American Leading Cases (5 Ed.), 259; 1 Jaggard, Torts, 605.

*Lemay* v. *Williams*, 32 Ark. 166, 175, was an action for a malicious prosecution. The malicious prosecution complained

of was an action brought by Lemay against Williams before a justice of the peace to recover a judgment on a note, and to foreclose a mortgage executed to secure the note. The court held that the action on the note was within, but the foreclosure of the mortgage was without, the jurisdiction of the justice of the peace. Mr. Justice Walker, in delivering the opinion of the court, said: "If, in the case under consideration, Lemay had based his right of action solely upon his claim of mortgage lien, and not also upon his note for the satisfaction of a debt within the jurisdiction of the justice of the peace, the subject-matter would have been one over which a justice would have had no jurisdiction, and trespass, not case, would be the appropriate remedy."

In this case appellant brought an action against appellee before a justice of the peace to recover the "Upp Place," and sued out a writ of possession therein. He attempted to use the writ for a lawful purpose, but the justice of the peace had no jurisdiction of the subject-matter of the action, and the writ was void. He therefore stands in the same position he would have occupied had he taken possession of the land without any writ, and is liable accordingly. The action for a malicious prosecution does not lie against him.

In giving instructions upon the ground there was evidence to show that appellant was guilty of a malicious prosecution, another error was committed. The instructions failed to inform the jury that, before they should return a verdict against appellant on the ground he was guilty of a malicious prosecution, they must find that he prosecuted the action before the justice of the peace without probable cause. In this the instructions were fatally defective. *Sexton* v. *Brock*, 15 Ark. 345; *Lemay* v. *Williams*, 32 Ark. 166; *Lavender* v. *Hudgens*, 32 Ark. 763; *Chrisman* v. *Carney*, 33 Ark. 316; *Foster* v. *Pitts*, 63 Ark. 387.

If the appellant, in evicting appellee and removing his goods from the demised premises, unnecessarily committed any injury to his person or goods, the latter can recover of the former, in this action, the damages occasioned thereby. Unless there be circumstances of aggravation attending the commission of the injuries, he is only entitled to actual damages.

The court erred in admitting the evidence objected to by appellant. Reversed and remanded for a new trial.

HUGHES, J., concurs in the judgment of the court, and also in the opinion, except the part which holds that the action for malicious prosecution will not lie if the subject-matter of the prosecution or suit was not within the jurisdiction of the court in which the prosecution was instituted and carried on, from which he dissents.

RIDDICK, J. I concur in the judgment, but, being of the opinion that the evidence conclusively shows that the prosecution complained of in this action was not malicious, I deem it unnecessary to discuss or decide whether under any state of facts an action for malicious prosecution might be maintained when the prosecution complained of was before a court having no jurisdiction. Vinson had a cause of action against Flynn to recover possession of the demised premises, the term of Flynn's lease having expired. He made a mistake, and brought his action in the wrong court. This tended to show ignorance of the law on the part of Vinson, but it did not show malice, and the evidence in my opinion is not sufficient to sustain a judgment for malicious prosecution. On other points I concur in what is said by Mr. Justice Battle.