HULTSMAN *v.* CARROLL.

Opinion delivered May 28, 1928.

433

Owens & Ehrman and St. Clair Hultsman, for appellant.

Tom F. Digby, for appellee.

Mehaffy, J. The appellant, in July, 1927, purchased a gasoline filling station from the appellee, paying therefor $6,000. Appellant brought this suit, and alleged that, at the time he purchased the property, he informed the appellee that he intended to sell gasoline at a price less than the prevailing prices at other filling stations in the city. That, in all probability, the other companies would try to freeze him out of business by selling gasoline at a nearby station for less than the price set by the appellant. He told appellee that he would not purchase the property unless appellee would agree not to enter into any such combination or sell gasoline at a price equal to or less than the price charged by appellant. The appellee stated that he did not care anything about the gasoline business, and if appellant would give him $6,000 he would let him have the property which was located across the street from appellee's garage, and appellee would not sell gasoline at a price equal to or less than the price

charged by appellant. Appellant alleged that, relying on this statement, he paid appellee the money, and began selling gasoline four cents cheaper than the generally prevailing prices. About two months later appellee started selling gasoline one cent cheaper per gallon than the price charged by the plaintiff.

This suit was then filed in the chancery court, asking that appellee be enjoined from a further breach of his contract, and for damages. A demurrer was filed to the complaint, which was by the chancellor sustained, and to reverse the order sustaining the demurrer and dismissing the complaint, this appeal is prosecuted.

The demurrer was as follows: (1) That the complaint did not state a cause of action in equity. (2) That the alleged contract upon which the action was based was on its face void and unenforceable. (3) That plaintiff had an adequate remedy at law.

The appellee first contends that the contract or agreement is void because it is in restraint of trade, and therefore contrary to public policy. A contract, of course, is against public policy if it is in any way injurious to the interest of the public or contravenes some established interest of society, or if it contravenes a public statute, or is against good morals, or tends to interfere with the public welfare.

"Public policy requires that every man shall be at liberty to work for himself, and shall not be at liberty to deprive himself or the State of his labor, skill, or talent, by any contract that he enters into. On the other hand, public policy requires that when a man has, by skill or by any other means, obtained something which he wants to sell, he should be at liberty to sell it in the most advantageous way in the market; and in order to enable him to sell it advantageously in the market, it is necessary that he should be able to preclude himself from entering into competition with the purchaser. In such a case the same public policy that enables him to do this does not restrain him from alienating that which he wants to alienate, and therefore enables him to enter into any

stipulation which, in the judgment of the court, is not unreasonable, having regard to the subject-matter of the contract. There are several reasons for upholding a covenant on the part of the vendor in all such cases to desist from the business in competition with the purchaser, which do not obtain in other cases. In the first place, the restraint is partial, in the sense that it covers only the time and locality during and in which the vendee carries on the business purchased, and beyond these limitations the seller is at liberty to carry on the same business. Then, too, the vendor receives an equivalent for his partial abstention from that business in the increased price paid him for it on account of his covenant; and his entering into and observance of the covenant not only do not tend to his pauperization to the detriment of the public, but, on the contrary, by securing to him the full value of his business and its good will, a value which he has an absolute right to secure in this way, the covenant operates to his affirmative pecuniary benefit and against his impoverishment, in that, while being paid for desisting from the particular business in the locality covered by it, he may still enter upon other pursuits of gain in the same locality, or upon this one in other localities. Finally, while such covenants preclude the competition of the covenantor, it is ordinarily neither their purpose nor effect to stifle competition generally in the locality, nor to prevent it at all in a way or to an extent injurious to the public, for the business in the hands of the purchaser is carried on just as it was in the hands of the vendor; the former merely takes the place of the latter; the commodities of the trade are as open to the public as they were before, the same competition exists as existed before, there is the same employment furnished to others after as before, the profits of the business go as they did before to swell the sum of public wealth, the public has the same opportunities of purchasing, if it is a mercantile business, and production is not lessened if it is a manufacturing plant." 6 R. C. L. 793.

The demurrer, of course, admits that appellant paid $6,000 for the land because the appellee promised that he would not engage in competition with him in his place of business across the street. According to the allegations of the complaint, appellee made this agreement, and would not have been able to sell his place for the $6,000 to appellant if he had not made it. It does not undertake to prohibit him from selling gasoline anywhere else except at the place across the street, at any price he may wish to sell it. It does not seek to prohibit or interfere with the sale of any other person at any locality, but it alleges that appellant desired to purchase it for the purpose of selling gasoline to the public at four cents below the prevailing prices, and expected competition from others, and expected that they would try to destroy his business by selling cheaper than he could afford to sell. He therefore contracted with the appellee that appellee would not engage in this competition at his place of business just across the street from the property purchased. The contract, if enforced, would in no way injure the public, and is not against public policy.

This court very recently said:

"There is no hard and fast rule in this State as to what contracts are void as being in restraint of trade, and each case must be judged according to its own facts and circumstances. It is also well settled that a person may legally purchase the business of another for the purpose of removing competition, with an agreement on the part of the seller not to carry on the same business in the same place for a limited period of time. Covenants of this kind operate to prevent the seller from engaging in a business which he sells, so as to protect the buyer in the enjoyment of what he has purchased and to enable the seller to get the full value of his property, including the good will of his business. In general this does not injure the public, because his business is open to all other persons, and there is little danger that it will suffer harm, if the business is profitable. The agreement could in no sense prevent other persons from entering the business,

if they should see it was a profitable one." *Robbins* v. *Plant,* 174 Ark. 639, 297 S. W. 1027; *Shapard* v. *Lesser,* 127 Ark. 590, 193 S. W. 262, 3 A. L. R. 247, and cases cited; *Wakenight* v. *Spear & Rogers,* 147 Ark. 342, 227 S. W. 419; *McSpadden* v. *Leonard,* 159 Ark. 193, 251 S. W. 694; *Bloom* v. *Home Ins. Agency,* 91 Ark. 367, 121 S. W. 293.

It is not contended that the contract involved is either in violation of law or immoral, but the contention is that it is contrary to public policy.

The appellee calls attention to and relies on the case of *Anderson* v. *Shawnee Compress Co.,* 17 Okla. 231, 87 P. 315, 15 L. R. A. (N. S.) 846. In that case the court said that the public welfare is the first consideration to which the courts will look, and then the question of whether the restraint upon the one party is or is not greater than the protection of the other requires. And the court further said:

"The real, the veritable, purpose actuating the officers of the Gulf Compress Company, as disclosed by its plan of organization and mode of operation, and as manifested by the circumstances surrounding the conduct of its business and the results of its management by them, is, beyond reasonable question, to place within their power the control of the compress industry, by purchasing or leasing those plants which are advantageously located in each of the hauling districts or territories established by the carriers in their cotton tariffs. * * * It may be true, as declared upon the witness stand by its president, that such is not the purpose of this organization; then the intention of its officers, as evinced in the declarations which fall from their lips, is at wide variance from the purposes evidenced by the results they have brought about."

The facts in that case are so different that the quotation from it by appellee has no application here. But we think a reading of the Oklahoma case will convince one, not only of the difference between the two cases, but that, according to the principles announced by the

Supreme Court of Oklahoma, the contract in the instant case is not contrary to public policy.

Appellee calls attention also to the case of *National Phonograph Co.* v. *Schlegel,* 117 Fed. 624. In that case the defendants filed a stipulation agreeing to an injunction. They agreed to be enjoined. But the court said: "Why do defendants agree to be enjoined? Is it simply to save costs? Is not the contract one that stifles trade? And if it is such a contract, should this court enforce it by the great writ of injunction? Are the parties to the contract alone concerned in its enforcement?"

Then the court further said:

"Injunctions are not granted as of course, and should not be granted when it is believed, as I do believe, that such a writ would be improperly used. As an injunction is not required to coerce the defendants in this case, they, in effect, having agreed to comply with complainant's demands, for what can the writ be used? Undoubtedly to intimidate or terrorize others engaged in the like business. It will be used to hold up to others that this court has recognized the validity of the contract. The decree of this court will be used for advertising literature; and, before a decree should be so used, it should be quite certain that such a decree is required as between the parties to the record. Believing that such a decree is not required as between the parties to the record herein on such grounds, the writ, although agreed to by the parties, should be denied."

In that case the court found, not only that the parties agreed to an injunction, but they were already complying with the contract, and that, so far as the parties themselves were concerned, there was no occasion whatever for an injunction, but it was sought for the purpose of terrorizing others and compelling others to comply with the wishes of the complainant. But there is no intimation or suggestion in the above case that an injunction would not be granted to prevent the violation of a contract which was entered into by the parties and was not in restraint of trade.

Appellee next calls attention to 22 Cyc. 866. It is true that it is there stated that, before a court will enjoin a breach, there must be no doubt about the validity of the contract and its terms must be clearly proved and the fact of breach established beyond doubt. But we have the facts here stated in the complaint and admitted to be true so far as the demurrer is concerned.

"Where one has made a valid contract restricting the use to which he may put his land, a violation of such restriction by him will be restrained by injunction; such covenants are usually made at the time of a conveyance, the grantee agreeing not to use the land conveyed in certain ways, or the grantor limiting his use of other land retained by him." 22 Cyc. 859.

If the contract is not contrary to public policy and the violations of the contract are continued from day to day, like the selling of gasoline, and the contract is not unreasonable, a court of equity will restrain the violation of the contract.

"The complainants are therefore entitled to a decree restraining the defendant from carting over any of the avenues in the park any stone taken from his lot for any purpose, except such loose stones as it is necessary to remove for the purpose of fitting his lot for building and occupation." *Haskell* v. *Wright,* 23 N. J. Eq. 389.

The Supreme Court of Michigan, where the contract involved was alleged to be in restraint of trade, where it is sought to restrain one from carrying on the ice business, said: "The rule is that contracts of this nature will be enforced in equity where the restraint is only partial, being limited as to time and place, and where reasonable grounds exist for the restraint, and where it is founded on a good consideration." *Up River Ice Co.* v. *Denler,* 114 Mich. 296, 72 N. W. 157, 68 A. S. R. 480.

The court in the above case also held that the fact that there was no time limit for which the seller must refrain from carrying on the business would not render the agreement invalid.

While, according to the allegations of the complaint, there is no time limit in the contract involved in the instant case, yet the restrictions were especially limited by the contract to the lot across the street from the one purchased by appellant. The contract does not undertake to prevent any other persons from engaging in competition with appellant, nor to prohibit appellee from selling gasoline wherever he may wish, and at any price for which he may wish to sell, except at his place of business across the street from the lot purchased by appellant.

We think the complaint states a cause of action, and the decree is therefore reversed, and remanded with directions to overrule the demurrer, and for further proceedings not inconsistent with this opinion.