prevented from discovering within 120 days after the rendition of the verdicts, are overruled.

This decision shall operate as an entry and order of the court.

*Applications overruled.*

EDWARDS *v.* C. N. INVESTMENT CO. ET AL.

[Cite as Edwards v. Investment Co. (1971), 27 Ohio Misc. 57.]

(No. 69-13270—Decided April 28, 1971.)

Shaker Heights Municipal Court.

*Mr. Robert A. Clair* and *Messrs. Clair, Wiles & Richards,* for plaintiff.

*Mr. A. R. Mays,* for defendants.

ROCKER, J.  Plaintiff had entered into a written lease in November of 1966 for an apartment, and several months after taking occupancy of the leased premises he became delinquent in rent for the month of March 1967.  On March 10, 1967, defendant entered the apartment when plaintiff was absent, removed the door lock and replaced it with another.  Plaintiff returned later and found himself locked out.  Following some attempts at being granted access to the apartment so he could remove his personal property and having met with refusals unless he paid the rent due until the rerental of the apartment plus the cost of redecorating the apartment estimated at $250.00, he referred his claim to an attorney.

During the month of March, defendant removed plaintiff's personal property from his department and placed it in a garage on the premises, so that the premises could be rented to a new lessee as of May 1, 1967.  In January of 1968, approximately 9 months later, defendant finally permitted plaintiff access to the garage and permitted him to remove his goods.

It is alleged in plaintiff's complaint that most of his goods were missing or damaged, and claims, therefor, damages in the sum of $5,288.00.

Defendant's answer and cross-petition sets forth its lease, particularly making note of paragraph No. 7 which reads as follows:

"(7) If the Tenant fails to pay rent when due or is in default for the prompt or full performance of any other provisions of this lease, for failure to comply with the above or, if the Tenant abandons the premises, then and in any such event the Landlord may, if the Landlord so elects, with or without notice of such election, except as herein provided, with or without demand, forthwith terminate this lease and the Tenant's right to possession of premises.

"Any and all property which may be removed from

the premises by the Landlord in accordance with the terms of this lease, may be handled, removed, stored or otherwise disposed of by the Landlord at the risk and expense of the Tenant, the Landlord in no event shall be responsible for the preservation or safekeeping thereof. The tenant shall pay to the Landlord, upon demand in writing, any and all expenses incurred with such removal and all storage charges against such property so long as the same shall be in the Landlord's possession or under the Landlord's control. If any property shall remain in the premises or in the possession of the Landlord and shall not be retaken by the Tenant within 10 days or repossessed by the Landlord under the terms of this lease, said property shall conclusively be deemed to have been forever abandoned by the Tenant.''

Defendant's cross-petition further makes demand for $265.00, the cost of redecorating the suite, and $199.00 for two months rental at $99.50 per month up to the month of May 1968, when they had replaced plaintiff with a new tenant.

Defendant takes the position with respect to the personal property that it was ''abandoned'' by plaintiff.

The common definition of ''abandonment'' appears in 2 Ohio Jurisprudence 2d No. 2 and reads as follows: ''One abandons property or a legal right when he intentionally and voluntarily forsakes or relinquishes it entirely, together with all hope, expectation, or intention of recovery of such property or the enforcement of such right ''

The evidence adduced at trial and the very fact of the filing of this law suit indicate to this court that plaintiff did not voluntarily or intentionally part with his property and did not as a matter of law abandon it.

We turn then to the question of the validity of defendant's lease and in particular the aforementioned paragraph No. 7.

Defendant's trial brief cites another case in which defendants were sued in the Court of Common Pleas of Lake County. That court found for defendant and its decision was upheld by the Court of Appeals of the Eleventh Appellate District. Defendant-appellee's brief in that court rested

substantially on the citations of *Moser* v. *Stebel,* 9 C. C. (N. S.) 217, 29 C. D. 487 (1906), and *Smith* v. *Hawkes,* 2 Ohio Dec. Rep. 733 (1862).

The *Moser* v. *Stebel case* held: "The position of a tenant whose tenancy has been forfeited by his own unlawful act, is analogous to that of one holding over his term * * *." The *Smith* v. *Hawkes case* held:

"When a tenant's term has expired and he refuses to surrender possession, the landlord may, in his absence, enter the house and remove his furniture * * *.

"The remedy given by our statute of 'Forcible Detainer' is not exclusive of, but cumulative to, this remedy without legal process."

Defendant also cites 6 A. L. R. 3d 195 to support the contention that "a provision in a lease giving, to the landlord, the right on certain contingencies to reenter without process or by such force as is necessary, is valid." The "freshest" cases covered in that citation are two; one from the state of New York and one from the state of New Jersey both decided in the year 1928 or approximately 40 years from the date the instant cause of action arose.

6 A. L. R. 3d 198 contains citations which reflect relatively more recent thinking on this question, such as: *Jordan* v. *Talbot* (1961), 55 Cal. 2d 597, wherein the court held "* * * the policy of the forcible entry and detainer statutes is the preservation of peace and that rights thereunder may not be contracted away, and a provision in the lease expressly permitting a forcible entry would be void as contrary to public policy."

At page 186 of 6 A. L. R. 3d, a general discussion of this subject is found stating that "An increasing number of jurisdictions uphold what seems to be the modern doctrine that a landlord otherwise entitled to possession must, on the refusal of the tenant to surrender the leased premises, resort to the remedy given by law to secure it; otherwise he would be liable in damages for using force or deception to regain possession."

While it is true that courts should not rule on questions of law based on the popularity of the decision in

other jurisdictions, one can hardly overlook the fact that those later decisions indicate interpretations of law that are in tune with the advancement of jurisprudence as it attempts to come closer to people's lives, social welfare and protection from abuse.

Not since the year 1862 has the Ohio Supreme Court had an opportunity to rule on this matter. That was a year during which time a large segment of our nation believed in the existence of inalienable property rights to own other human beings and was willing to engage in civil war to prove the point. Not only did the Civil War alter that position, but jurisprudence in the United States began to indicate an understanding of a new relationship between law and people. Yet, it is not completely successful in that endeavor in all phases of human affairs, but most assuredly it should at this late date recognize the implications of sanctioning physical disposition of people from an abode to which they gained possession originally by lawful means, without legal process.

Plaintiff, herein, may have had some defense to an action in forcible entry and detainer; on the other hand, he may have had none. But this can never be determined inasmuch as he was peremptorily deprived of his right to resort to the processes of the courts.

The courts of this nation should not countenance such conduct especially in the times in which we live; a time when every effort is being extended by government in every branch to quell what appears to be a return to governing by violence and fear, rather than by rule of law.

It is difficult to imagine a more volatile situation from which extreme violence could be reasonably anticipated than the surreptitious removal of a man's home, whether it be a rented one or a mortgaged one. Violence in this case did not result, we believe, since fortunately the plaintiff does not appear to be a violent type. The opportunity for violence in this case, however, was enhanced by the fact that plaintiff claims he lost numerous revolvers and other firearms among the goods taken from his apartment.

It has long been the rule in Ohio that a contract in

advance to renounce and waive one's right to appeal to the courts for the redress of wrongs is void and of no effect. (*Myers* v. *Jenkins*, 63 Ohio St. 101.)

That position was strengthened by the Court of Appeals of Hamilton County in *Coward* v. *Fleming*, 89 Ohio App. 485, in which the court held: "* * * A right of entry is not a warrant authorizing the landlord to take the law into his own hands by forcibly ejecting the tenant. The former must resort to his legal remedy to enforce the right and must comply with all the conditions precedent imposed by law." The court goes on to recite 22 American Jurisprudence 910 which contains the following language: "This is the philosophy at the foundation of all these actions of forcible entry and detainer which are designed to compel the party out of possession to respect and resort to the law alone to obtain what he claims is his."

This court is, therefore, of the opinion that defendant's re-entry into plaintiff's suite was violative of law. The fact that defendant has used this technique to regain possession in the past, does not impress upon it the stamp of legality. The court holds that provisions of item No. 7 of the lease are void and unenforceable, and further that a landlord must resort to remedies at law for dispossessing a tenant.

We now turn to the question of defendant's liability, if any, for damage to plaintiff's property as a result of the unlawful removal of same and the conditions under which defendant conducted the bailment of the goods.

The testimony of both parties indicate that the goods were held in a garage on the premises. Defendant claimed to have made an inventory of the goods, but could not locate it at the time of trial. It is obvious from those facts that defendant was not concerned with the preservation of plaintiff's property in quantity as well as condition. The court finds that defendants were negligent in their duty as bailee of the goods and cannot rely on the portion of paragraph No. 7 of their lease to absolve themselves from such liability as a bailee, under the circumstances existing in this case.

With reference, then, to plaintiff's damages, the court finds a serious lack of credible evidence as to the items lost and more so as to their value. Plaintiff's original petition prayed for an amount considerably in excess of his amended petition in which he, himself, devalued his list of items. Some of the items of which he had invoices to prove cost indicated they had been purchased 3 to 4 years prior to the alleged loss. In no cases were his losses proved with particularity as to their value beyond his own estimate. The only exceptions to this were his valuation of 2 original drawings which he made and based his valuation on prices he had previously received for such work; also, defendant's building agent, Euladeen Cooper, testified that she estimated the value of the goods removed at about $100.00, referring to the furniture.

The court cannot engage in speculation as to value and proof of damages. It also must attach such degree of credibility to plaintiff's valuations as it finds substantiated by any particular ability on his part to make such evaluations. His score on this is not too impressive, with exception of the aforementioned drawings. To maintain, for example, that a chair he purchased in February of 1964 for the sum of $80.00 had a value of $70.00 after approximately three years of use, indicates to any reasonable person that plaintiff was engaging in guesswork rather than information and knowledge.

It is the court's opinion, therefore, that judgment be granted to plaintiff against defendants in the sum of $325.00 for the two drawings plus the sum of $500.00, which the court finds to be the reasonable value of the other articles listed by plaintiff along with the purchase prices of same. In total, therefore, the court finds for the plaintiff in the sum of $825.00 and costs against which the court finds for defendants on their cross-petition for rent due up to the date of their unlawful eviction of plaintiff in the sum of $33.17, representing one third of the rent for the month of March, thereby reducing the judgment against defendants to the amount of $791.83 and costs of this action.