Bonnie Wallace WILSON and Clyde WILSON *v.*
D. L. WALLACE and Dorothy WALLACE

81-60                                    622 S.W. 2d 164

Supreme Court of Arkansas
Opinion delivered October 12, 1981

*Eaton & Benton,* by: *Charles S. Embry, Jr.,* for appellants.

*Gill & Johnson,* by: *Marion S. Gill,* for appellees.

GEORGE ROSE SMITH, Justice. The question is this: When the widowed mother of an infant child remarries and later joins her second husband in obtaining a probate court decree by which he adopts the child, are the paternal grandparents of the child still entitled to obtain visitation privileges by a chancery court proceeding? The chancellor, recognizing the binding effect of the Court of Appeals decision in *Hensley* v. *Wist,* 270 Ark. 1004, 607 S.W. 2d 80 (Ark. App. 1980), answered the question in the affirmative and continued in force the existing visitation privileges of the appellees. We cannot agree with the *Hensley* decision and must therefore deny the grandparents' claim to visitation.

The facts are not in dispute. The child, Dana, was born to Danny and Bonnie Wallace in 1972. Bonnie later sued for divorce, but her husband was killed in a traffic accident in 1974. Danny's parents, the appellees, had a friendly relationship with Bonnie and with their granddaughter until a dispute arose in 1979, apparently after Bonnie had married Clyde Wilson. The Wallaces then brought a suit in chancery court against Bonnie and obtained a consent decree recognizing specified visitation privileges. A 1975 statute permits the maintenance of such a suit by grandparents whose own child is deceased. Ark. Stat. Ann. § 57-135 (Supp. 1981).

In July, 1980, the Bradley Probate Court entered a final decree by which Clyde Wilson adopted Dana, whose name was changed to Dana Lynette Wilson. The Wallaces then brought in Clyde Wilson as a defendant in the chancery

court case and had the Wilsons cited for contempt of court for their refusal to recognize the Wallaces' visitation privileges. After a hearing the chancellor denied the Wilsons' motion for summary judgment and reaffirmed the Wallaces' visitation privileges, with clauses in the decree prohibiting the Wallaces from ever referring to their deceased son in the child's presence, from ever saying that Dana had any father except Clyde Wilson, and from ever referring to Dana by any surname except Wilson.

Our disagreement with the Court of Appeals decision in *Hensley* rests squarely on a 1977 statute which amended the adoption law to provide for the first time that the effect of an adoption decree, except with respect to a spouse of the petitioner and relatives of that spouse (here Bonnie and her relatives), is "to terminate all legal relationships between the adopted individual and his relatives, including his natural parents, *so that the adopted individual thereafter is a stranger to his former relatives for all purposes.*" (Our italics.) Ark. Stat. Ann. § 56-215 (Supp. 1981). Although the italicized language may seem insensitive with respect to the adopted child's blood relatives, who find themselves suddenly put in the position of strangers, the difficulties which the statute was meant to overcome are illustrated by the provisions of the order now before us, with its awkward attempts to conceal the adoption from the child.

Such difficulties are unlikely when all those concerned remain on amicable terms with one another, but problems and tensions must be faced and resolved when bitterness arises, as here. It was unquestionably within the province of the legislature to decide that the reasons favoring the solidarity of the adoptive family outweigh those favoring grandparents and other blood kin who are related to the child through the deceased parent. The final decision as to the state's policy lay with the legislature, not with the courts. We have already recognized the force of the 1977 statute in two earlier cases. *Poe* v. *Case*, 263 Ark. 488, 565 S.W. 2d 612 (1978); *Quarles* v. *French*, 272 Ark. 51, 611 S.W. 2d 757 (1981). We adhere to our position and accordingly overrule the decision of the Court of Appeals in *Hensley*, which in

effect applied our former law as if the 1977 statute did not exist.

Reversed.