Carl WOODSON and Marilyn WOODSON *v.*
Karen KILCREASE and Mike KILCREASE

CA 82-277                                                648 S.W.2d 72

Court of Appeals of Arkansas
Opinion delivered March 9, 1983
[Rehearing denied March 30, 1983.]

*Jones & Petty,* by: *John Harris Jones,* for appellants.

*Paul B. Pendleton,* for appellees.

GEORGE K. CRACRAFT, Judge. Carl Woodson and Marilyn Woodson, the paternal grandparents of Caroline (Woodson) Kilcrease, appeal from an order of the Chancery Court of Jefferson County refusing to enforce right of visitation it granted them after the date of Caroline's adoption by her widowed mother's second husband. The question is this: When the widowed mother of an infant child remarries and later joins a second husband in obtaining a probate court decree by which he adopts the child, are the paternal grandparents still entitled to obtain visitation privileges by a chancery court proceeding? This identical question was answered in the negative in *Wilson* v. *Wallace,* 274 Ark. 48, 622 S.W.2d 164 (1981). The appellants contend that *Wilson* is not controlling here because in *Wilson* the visitation rights were obtained by a consent order entered *prior* to the adoption whereas in this case the visitation was awarded in a consent decree entered *after* the adoption. We find no substance in that distinction and conclude that the chancellor was correct.

A clear understanding of our determination in this case requires that the facts be viewed in light of the development of our law in this area.

In *Quarles* v. *French,* 272 Ark. 51, 611 S.W.2d 757 (1981), the court pointed out that at common law a grandparent could not maintain an action for privilege of visitation with a grandchild except in a custody proceeding. In 1975 Ark. Stat. Ann. § 57-135 (Supp. 1981) was enacted and permits the maintenance of a separate suit in the chancery courts for visitation by grandparents whose own child is deceased. In

1977 the Arkansas Legislature enacted the Revised Uniform Adoption Act, Ark. Stat. Ann. § 56-201 et seq. (Supp. 1981). Section 56-215 (a) (1) provided for the first time in this State that the effect of an adoption decree, except with respect to a spouse of the petitioner and relatives of that spouse is "to terminate all relationships between the adopted individual and his relatives, including his natural parents, *so that the adopted individual thereafter is a stranger to his former relatives for all purposes."*

The potential conflict between the policies of these two enactments came to the attention of our court in *Poe* v. *Case,* 263 Ark. 488, 565 S.W.2d 612 (1978). In *Poe* the paternal grandparents did not seek visitation privileges in the chancery court under Ark. Stat. Ann. § 57-135 (Supp. 1981) but obtained those rights in the probate court at the same time an order of adoption of their grandchild was granted. The Supreme Court determined that the Adoption Act made no provision for the allowance of such rights in adoption proceedings and that the portion of the decree of adoption allowing them was void and unenforcible. The court rejected the argument of the grandparents that an overriding public policy of this state favoring visitation rights of grandparents was expressed in Ark. Stat. Ann. § 57-135 which granted them that right. The court stated:

> Those statutes address themselves to courts having jurisdiction in custody proceedings and are clearly inapplicable by their own terms to adoption proceedings. Since this is the case, they certainly do not indicate a reversal of the *strong public policy,* expressed in the adoption statutes, to strengthen the relationship between the adopted child and its adoptive family and to terminate the previous family relationship . . . . Besides, the new adoption statute is the *most recent declaration of public policy with reference to adoptions.* (Emphasis supplied)

It is clear from the concluding paragraph in *Poe* that the court was declaring that when the public policy favoring maintenance of grandparental ties collided with the strong-

er public policy to strengthen the relationships within adoptive families, the former must give way to the latter.

On November 5, 1980, however, the former Court of Appeals handed down its decision in *Hensley* v. *Wist*, 270 Ark. 1004, 607 S.W.2d 80 (Ark. App. 1980). In *Hensley* the parents of the child involved had been divorced in 1976. Her mother remarried after the natural father had been killed in an accident. The paternal grandparents petitioned the chancery court for visitation rights pursuant to Ark. Stat. Ann. § 57-135 (Supp. 1981) but no action was taken on it. In February 1980 the probate court entered an order of adoption for the second husband of the natural mother, but denied the grandparents' petition for a ruling on their chancery court petition for visitation rights. The Court of Appeals ruled that the chancellor erred in summarily denying the petition for visitation and reversed and remanded the cause for a hearing on that motion. In its opinion the Court of Appeals determined that the concluding paragraph in *Poe* as to the effect of adoption on the relationship with natural parents' family was not necessary to its decision and was therefore not controlling. It concluded that the two public policies were of equal weight and that a chancellor was required "to balance those two public policies, that of allowing visitation and that of making the adoptive family strong, and determine the best interest of the children." This decision of the Court of Appeals was not reviewed by the Supreme Court at that time.

On October 12, 1981 the Supreme Court rendered its opinion in *Wilson* v. *Wallace, supra,* in which it expressly overruled *Hensley* and reaffirmed its language in *Poe,* stating that the legislature had declared that the public policies favoring the solidarity of the adoptive family outweighed those favoring grandparents and others who were related to the child through its deceased parent.

The critical events in the appeal now before us occurred in the interim between *Hensley* and *Wilson.* The appellee, Karen W. Kilcrease, was divorced from Phillip Woodson in 1973 and subsequently married Mike Kilcrease. Phillip Woodson shared his court-ordered visitation rights with his

parents until his death in 1979. After his death the natural mother voluntarily continued to permit visitation with the grandparents. In August 1980 the child Caroline was adopted by Mike Kilcrease by an order of the probate court. The adoptive parents continued to recognize those voluntary visitation rights until the summer of 1981 when a dispute arose and they were terminated.

On September 9, 1981 the controversy was resolved and a consent order was entered in the chancery court which incorporated an agreement of the parties, permitting specific visitation by the grandparents. That order was entered by the court on written consent of all parties and in the belief that he could do so under the decision in *Hensley*.

Shortly after the decision in *Wilson* was handed down the adoptive parents ceased to comply with the consent order and the grandparents sought enforcement of it in the chancery court in contempt proceedings. The chancellor refused to enforce the order for the following reasons:

> The fact that a lower court decision was reversed by the highest appellate court does not permit this court to do what the current law says clearly it may not do. The court will not enforce the order entered September 9, 1981.

This action of the chancellor is fully warranted by the following language from *Wilson* v. *Wallace, supra*:

> It was unquestionably within the province of the legislature to decide that *the reasons favoring the solidarity of the adoptive family outweigh those favoring grandparents and other blood kin* who are related to the child through the deceased parent. The final decision as to the state's policy lay with the legislature, not with the courts. We have already recognized the force of the 1977 statute in two earlier cases. *Poe* v. *Case,* 263 Ark. 488, 565 S.W.2d 612 (1978); *Quarles* v. *French,* 272 Ark. 51, 611 S.W.2d 757 (1981). We adhere to our position and accordingly overrule the decision of the Court of Appeals in *Hensley,* which in effect applied

our former law as if the 1977 statute did not exist. (Emphasis supplied)

It follows that as the legislature has already determined where the best interest of the child lies in such situations there is nothing for the chancellor to weigh and balance in determining it. The visitation order in question ought not have been entered and the same public policy mandates that it not be enforced.

We agree with the chancellor that even though the visitation order was entered after the decree of adoption, he was fully warranted in refusing to enforce it in view of the strong public policy favoring the solidarity of adoptive families.

The appellants further argue that the policy of the law is to favor settlements such as this supplemental consent decree. This argument again overlooks the declaration of a stronger public policy in favor of adoptive families. It is to be noted that in *Wilson* the visitation order was also entered by consent. It is also to be noted that in *Poe* the grandparents relied upon the fact that the adoptive parents had *agreed* to those visitation rights as a basis for the natural father's consent to the adoption. The court in *Poe* disposed of that argument in the following language:

> An agreement to provide for such visitation rights in the absence of statute is against public policy and void and unenforceable. *Whetmore* v. *Pratello,* 197 Or. 396, 252 P.2d 1083 (1953); *Stickles* v. *Reichardt,* 203 Wis. 579, 234 N.W. 728 (1931).

If any doubt as to the import of that statement arises from its context, a simple perusal of the two cases cited as authority for it makes it crystal clear that any agreements or other actions which seek to undermine the public policy favoring the adoptive family are void and unenforceable.

The appellants also argue that the visitation order was entered "in accord with the public policy at the time of entry." The public policy involved here was declared by the

legislature in its enactment of the Revised Uniform Adoption Act in 1977. The fact that it had been misinterpreted in *Hensley* does not override the interpretation of it previously made in *Poe* and subsequently affirmed in *Wilson*.

We find no error.

CLONINGER, CORBIN and GLAZE, JJ., concur.

DONALD L. CORBIN, Judge, concurring. This is an area of the law that clearly needs to be addressed by legislative action. Social scientists are writing more each day about the good to be gleaned by children having interaction with their grandparents. If anything, there is a biological and moral right of the grandparents to have a relationship with their grandchildren and vice versa. All parties can and should benefit by allowing some interaction between the grandparents and the adoptive child. Case authority forecloses any consideration by the chancellor in these instances. We do recognize that visitation may not be beneficial in every instance.

CLONINGER and GLAZE, JJ., join in this concurrence.