Johnny GORMAN et ux *v.* Russell RATLIFF

85-322                                    712 S.W.2d 888

Supreme Court of Arkansas
Opinion delivered June 30, 1986

*James B. DePriest*, Central Arkansas Legal Services, for appellants.

*Bridges, Young, Matthews, Holmes & Drake*, by: *Michael J. Dennis*, for appellee.

JACK HOLT, JR., Chief Justice. This landlord/tenant case requires interpretation of the Forcible Entry and Detainer statutes, Ark. Stat. Ann. §§ 34-1501—34-1512 (Supp. 1985). Because we are being asked to interpret an act of the General Assembly, our jurisdiction is pursuant to Sup. Ct. R. 29(1)(c).

The appellants, Johnny and Mary Gorman, were tenants of the appellee, Russell Ratliff. The appellants admit that they became delinquent in their rent payments and that the appellee

asked them to vacate the premises. Before they did so, Ratliff entered the rental house while the appellants were not at home and removed all of their personal property. Ratliff then stored the property, which included a refrigerator, stove, beds, childrens' toys, a bassinet, personal papers, and other items. The appellants filed suit against Ratliff claiming his actions constitute a wrongful and constructive eviction, and a wrongful conversion of property.

Ratliff filed an answer and counterclaim in which he claimed that appellants had violated the terms of the lease agreement between the parties. Ratliff relied on provisions in the lease permitting him upon nonpayment of rent to enter the property and store all personal property left at the leased premises. The lease also provided that if the charges are still unpaid after 30 days, the stored property can be sold to satisfy the rent arrearage.

In an amended complaint, appellants alleged that Ratliff's actions constitute a forcible entry and detainer. To the extent that appellee's actions were in accordance with the terms of the lease, appellants claim the lease is illegal, unconscionable and against public policy.

The parties stipulated that the lease was entered into on November 30, 1984, that Ratliff and not appellants has had possession of the premises since April 23, 1985, and that Ratliff has had possession of appellants' personal property since then, and that no judicial order has been entered granting possession of the personal property to Ratliff.

The trial court ruled, after a preliminary hearing on appellants' motion for relief pendente lite that, pursuant to the lease contract, Ratliff had a right to peaceable repossession of the premises and a lien on the personal property found therein. After a trial, the court denied appellants' claim and awarded Ratliff $528 on his counterclaim, that amount representing unpaid rent and moving, storing, and cleaning expenses. The court further found that the lease conforms to all applicable Arkansas law. We disagree and reverse the trial court's order.

The lease provided in pertinent part:

10.   Any violation of any provision of this lease by any of the lessees, or any person on the premises with the lessee's

consent, or any failure to pay rent upon the date due, shall result, at the option of the lessor, in the immediate termination of this lease without notice of any kind, and lessor may thereupon enter said premises and take and retain possession thereof and exclude lessees therefrom.

12. If lessees leave said premises unoccupied at any time while rent is due and unpaid, lessor may, if desired, take immediate possession thereof and exclude lessee therefrom, removing and storing at the expense of said lessees all property from contained therein.

14. The lessor shall have the lien granted by law all baggage and other property of lessees for their rent, accomodation and services, and the lessees hereby grant to lessor a lien upon all personal property brought into said premises, regardless of any provisions of law or whether or not the apartment is furnished, and lessor may enforce said lien as provided by law or by entering said premises and either taking possession thereof and the belongings contained therein for safekeeping, or by removing said property therefrom and storing the same at the expense of the lessees. Said lien may be enforced whenever rent is due and unpaid and regardless of whether or not a three (3) day notice to pay rent or quit shall have been served, and enforcement of the lien shall not operate to waive any other rights of the lessor in unlawful detainer or otherwise. If rent is still due and unpaid thirty (30) days after the enforcement of said lien, then the lessor may sell any or all personal property taken possession of as herein provided, and may apply any monies received against the unpaid rent, . . . .

In Act 615 of 1981 the legislature revised the statutes describing the cause of action for forcible entry and detainer and unlawful detainer and prescribing the procedure for carrying out the rights and remedies of the affected parties. The legislature did so because it found the former statutes were in need of clarification and revision and it was in the best interest of the people that "an additional procedure be specifically prescribed for the enforcement of the rights of parties. . ." Ark. Stat. Ann. § 34-1501 (Supp. 1985). That additional procedure afforded persons

affected by the legislation an opportunity to be heard on legitimate objections to writs of possession, *Id.* At the outset, therefore, the legislature evinced a desire to extend additional protection to parties in possession of property before that property could be taken from them, as well as to provide for procedures to expedite the removal of parties who are unlawfully in possession of property.

Section 34-1503 defines those acts that will constitute a forcible entry and detainer as follows:

> If any person shall enter into or upon any lands, tenements or other possessions and detain or hold the same without right or claim to title, or who shall enter by breaking open the doors and windows or other parts of the house, whether any person be in or not, or by threatening to kill, maim or beat the party in possession or by such words and acts as have a natural tendency to excite fear or apprehension of danger or by putting out of doors or by carrying away the goods of the party in possession, or by entering peaceably and then turning out by force or frightening by threats or other circumstances of terror the party to yield possession, in such cases every person so offending shall be deemed guilty of a forcible entry and detainer within the meaning of this Act.

Included in this list is the action taken by the landlord in this case: "carrying away the goods of the party in possession". Appellee asks us to read this statute as prohibiting only people "without right or claim to title" from carrying away the goods of the party in possession. We do not find his position persuasive however. In this statute, the legislature has embodied guidelines of prohibited conduct, any one of which constitutes a forcible entry and detainer within the meaning of the Act, thus giving protection to appellants.

In addition to delineating prohibited conduct, the legislature provided a remedy for landlords with holdover tenants and others guilty of forcible entry and detainer and unlawful detainer. Once a party is unlawfully in possession of property, the person with a cause of action under this Act may file a complaint and an affidavit in circuit court and the complaint will then be served on the defendant with a notice of intention to issue a writ of

possession. § 34-1507. If the defendant does not respond within five days the writ of possession is issued. If the party responds and objects, a hearing will be held. At the hearing, if the court decides the plaintiff is likely to succeed and the plaintiff provides adequate security, the court then orders the clerk to issue the writ. *Id.* For the defendant to retain possession of the property, he must provide adequate security. *Id.*

Although a landlord's use of self-help to evict a holdover tenant is not specifically addressed by the act, § 34-1502 does provide:

> No person shall enter into or upon any lands, tenements, other possessions, and detain or hold the same, but where an entry is given by law, and then only in a peaceable manner.

■ No entry by a landlord onto property occupied by another is given by Act 615, except by first resorting to legal process. Accordingly, self-help action is prohibited.

■ This finding is in keeping with the long standing policy behind the forcible entry and detainer statutes, which were first enacted to prevent landlords from retaking their land by force. *Vinson* v. *Flynn,* 64 Ark. 453 (1897). The statutes were designed to restore possession to the tenant until the right to possession could be adjudicated and to compel people "to the more pacific course of suits in court, where the weak and strong stand upon equal terms." *Id., quoting Littell* v. *Grady,* 38 Ark. 584; *see also* 35 Am Jur 2d *Forcible Entry & Detainer* § 5 p. 894 (1967). This concept has evolved until now the modern doctrine requires a landlord, otherwise entitled to possession, upon the refusal of the tenant to surrender the leased premises, to "resort to the remedy given by law to secure it". 50 Am Jr 2d *Landlord & Tenant* § 1220 p. 104 (1970); Annotation, 6 A.L.R.3d 177 § 5 (1966).

Other courts addressing this same question have held that, although the real owner of the property may be ultimately entitled to possession of the property, the entry and detainer action is designed to compel the party out of actual possession to respect the present possession of the other party and resort to legal channels to obtain possession. *See e.g., Floro* v. *Parker,* 205 So.2d 363 (Fla. 1968); *Jordan* v. *Talbot,* 55 Cal. 2d 597, 12 Cal. Rptr.

488, 361 P.2d 20 (1961); *Bass* v. *Boetel & Co.*, 191 Neb. 733, 217 N.W.2d 804 (1974); and *Edwards* v. *C.N. Investment Co.*, 27 Ohio Misc. 57, 272 N.E.2d 652 (1971).

The Arkansas Legislature through Act 615 has expressed its intention to prohibit landlords from entering premises without statutory authority. Recognizing that landlords, too, have rights with respect to their property, and the problems they face, particularly with holdover tenants, the legislature in the same Act establishes procedures to enable them to expeditiously evict tenants.

Although the terms of the lease agreement clearly permitted Ratliff's actions, the appellants did not waive their rights under the forcible entry and detainer statutes by executing the lease agreement. Section 34-1503 prohibits several kinds of conduct and the appellee is asking us to find that the tenant waived one of them. The provisions of § 34-1503 cannot be isolated so as to permit waiver of a portion of the statute. Nor can the entire statute be waived, since to do so would conceivably permit a person to threaten "to kill, maim or beat the party in possession," actions which are absolutely prohibited.

For these reasons those provisions of the lease authorizing the landlord's self-help remedy are invalid and the trial court's granting of relief to appellee is reversed.

Appellants include a prayer for actual and punitive damages in this appeal. Section 34-1509 provides that, if the judgment is for the tenant, the court should give judgment for costs and "any damages that may be assessed in favor of the defendant." The only evidence of damages which can be found in the record is the appellants' claim that the property taken from them was worth $1,000. Much of that property has now been returned pursuant to appellants' claim of exemption. There was no evidence presented as to punitive damages.

Accordingly, we remand this matter to the trial court to determine what, if any, damages have been suffered by appellants.

Reversed and remanded.

HICKMAN and NEWBERN, JJ., concur.

DAVID NEWBERN, Justice, concurring. The result reached by the majority is correct. However, I believe the majority opinion does not correctly address the central issue in the case. That issue is whether a lessee, by a provision in a lease contract, may confer upon the lessor the "right" to enter which, according to Ark. Stat. Ann. § 34-1503 (Supp. 1985), exempts the landlord from liability for forcible entry.

The majority opinion adequately describes the policies behind the forcible entry and unlawful detainer statutes. However, in applying those policies to invalidating the provisions of the lease which are contrary to them the only discussion is about whether one part of the statute may be "waived" and not the others. If that were the issue, I believe a strong argument could be made that, by contract, the parties might create a landlord's "right" to enter but might not be able to create a right to commit the criminal acts stated disjunctively in § 34-1503.

We should say simply that the General Assembly has stated a strong public policy against forcible entry by a landlord, and a contract by which the parties seek to avoid that policy is invalid. In *Ladd* v. *Ladd*, 265 Ark. 725, 580 S.W.2d 696 (1979) we held an agreement invalid for violation of public policy. *See also Hultsman* v. *Carroll*, 177 Ark. 432, 6 S.W.2d 551 (1928); *Swann* v. *Swann*, 21 F. 299 (E.D. Ark. 1884); *Woodson* v. *Kilcrease*, 7 Ark. App. 252, 648 S.W.2d 72 (1983). The Arkansas General Assembly has made our public policy clear in the area of landlord-tenant relations. We need not go beyond that policy to find the contract invalid and unenforceable.

HICKMAN, J., joins.