James RUDOLPH and Marilyn Rudolph, as Next Friends
of Molly Rudolph, a Minor, and Molly Rudolph *v.* Brandon
Shane FLOYD and Arthur Floyd and Charlotte Floyd

92-160                                   832 S.W.2d 219

Supreme Court of Arkansas
Opinion delivered June 1, 1992

*Bramblett & Pratt*, by: *Eugene D. Bramblett*, for appellants.

*Sanders, Hill, Frye & Mickel*, by: *William C. Frye*, for
appellee.

ROBERT L. BROWN, Justice. This appeal comes to us from an
order by the chancery court granting visitation to a paternal
grandfather, after paternity was established, for a child born out
of wedlock. The natural mother, Molly Rudolph, and the parents
of the mother, James Rudolph and Marilyn Rudolph, appeal
from the court's order on the basis that applicable statutes do not
authorize such visitations. We disagree and affirm the chancery
court's decision.

The facts are not in dispute. On August 28, 1990, Molly
Rudolph, who was then a minor, gave birth to a daughter. Prior to
the birth, on July 17, 1990, appellee Brandon Floyd, who had
been told by Molly Rudolph that he was not the father, filed a

paternity petition in chancery court, asserting that he was indeed the father of the unborn child and requesting custody of the child and, alternatively, visitation. Appellees Arthur Floyd and Charlotte Floyd, who are the parents of Brandon Floyd, joined in that petition and prayed that the court grant them grandparental rights and visitation rights.

On September 28, 1990, the chancery court heard the case and announced at the conclusion of the hearing that visitation of the grandparents is a "right recognized by the court" and that visitation by the father and grandfather would run concurrently. On December 17, 1990, the court entered an order establishing paternity in Brandon Floyd, awarding custody to Molly Rudolph, assessing child support against Brandon Floyd, and granting visitation rights to Arthur Floyd, as grandfather, to be exercised concurrently with Brandon Floyd until the child attained six years of age.

The Rudolphs raise as their sole point for reversal the absence of statutory authority to award visitation rights to grandparents for children born out of wedlock.

The issue of visitation rights and grandparents has been discussed comprehensively in Arkansas. *See Brummer and Looney, Grandparent Rights in Custody, Adoption, and Visitation Cases*, 39 Ark. L. Rev. 259 (1985). There, the authors wrote:

> Grandparent rights, to the extent they may be said to exist, are derivative of their son's or daughter's parental rights. . . . Because a grandparent's rights are only derivative, they may be contingent upon the establishment of paternity or maternity and are subject to divestment when parental rights are terminated. Grandparents, therefore, have a keen interest in most legal proceedings which affect their grandchildren.

39 Ark. L. Rev. at 261. In the case before us, paternity was established in Brandon Floyd by the chancery court, thus giving his father, Arthur Floyd, a legitimate interest in the child.

We have held that rights existing in grandparents must be derived from statutes or conferred by a court of competent jurisdiction pursuant to statutes. *Cox* v. *Stayton*, 273 Ark. 298, 619 S.W.2d 617 (1981); *Quarles* v. *French*, 272 Ark. 51, 611

S.W.2d 757 (1981). Here, a court of competent jurisdiction has awarded visitation rights to the grandfather, and a statute specifically authorizes a chancery court to grant visitation after a paternity finding:

> (a)   Subsequent to the finding by the chancery court that the defendant is the father of the child, the court shall follow the same guidelines, procedures, and requirements as set forth in the laws of this state applicable to child support orders and judgments entered by the chancery court as if it were a case involving a child born of a marriage in awarding custody, *visitation*, setting amounts of support costs and attorneys' fees, and directing payments through the clerk of the court.

Ark. Code Ann. § 9-10-109(a) (Supp. 1991). (Emphasis ours.) What the chancery court did in this case is precisely what § 9-10-109(a) contemplates. It awarded visitation rights to interested parties, that is, the father and grandfather, after paternity was established.

We are mindful of the argument raised by the Rudolphs that one statute conferring grandparent visitation rights was amended in 1987 to provide visitation "if the marital relationship between the parents of the child has been severed by either death, divorce or legal separation." Ark. Code Ann. § 9-13-103(a)(1) (1987). That statute, however, does not purport to exclude grandparent visitation after a paternity finding, and, again, Ark. Code Ann. § 9-10-109(a) (Supp. 1991) specifically provides for visitation grants after paternity is found.

In sum, where there is a statute providing for visitation after a paternity finding, and where a petition is filed by the grandfather requesting visitation, the chancery court operated well within its authority in granting visitation rights to the grandfather as well as the father. We hold that there was no abuse of discretion.

Affirmed.

DUDLEY and HAYS, JJ., dissent.

ROBERT H. DUDLEY, Justice, dissenting. The majority opinion holds that paternal grandparents are entitled to an order

granting them visitation with their grandchild who was born out of wedlock. I dissent.

At common law a father did not have a right of visitation with his child born out of wedlock, and likewise the paternal grandparents had no such right. "[A]ny rights existing in grandparents must be derived from statutes. . . ." *Cox* v. *Stayton*, 273 Ark. 298, 304, 619 S.W.2d 617, 620 (1981). In 1979, by statute, the *father* of a child born out of wedlock was given the right of visitation, but that statute did not provide for a right of visitation by the grandparents. Ark. Code Ann. § 9-10-114 (Repl. 1991). Today, there is no statute giving grandparents of a child born out of wedlock a right of visitation. There are two sections of the statutes that pertain to this issue. The first section codifies the statutes under Title 9, Chapter 10, and styles them "Paternity." The second group of statutes are codified under Title 9, Chapter 13, and are styled "Child Custody and Visitation." Since the second chapter of statutes specifically deals with grandparent visitation, it will be discussed first.

Chapter 13 — Child Custody and Visitation Statutes

The history of the "grandparents visitation statute" is as follows. Section 1 of Act 320 of 1975, codified as Ark. Stat. Ann. § 34-1211.1 (Supp. 1983), provided that "in divorce or custody proceedings" the court could grant visitation rights to either the maternal or paternal grandparents. That act was amended by Act 403 of 1985, and was codified as Ark. Stat. Ann. § 34-1211.2 (Supp. 1985). Section 1 of that act provided that the court could grant a right of visitation to a grandparent *"regardless of the marital status of the parents of the child or the relationship of the grandparents to the person having custody of the child."* This act gave grandparents, such as the ones now before us, the right to petition for and receive an award of visitation. However, this act was amended at the next session of the General Assembly. "The legislature was apparently concerned that such a liberal provision would bestow upon grandparents rights greater than those given parents. Parental prerogative could be continually challenged in court without adverse consequences to meddling grandparents." Brummer & Looney, *Grandparent Rights in Custody, Adoption, and Visitation Cases*, 39 Ark. L. Rev. 259, 273 (1985). By Act 17 of 1987, the General Assembly amended the "liberal provision."

The act contains an emergency clause which provides:

> It is hereby found and determined by the General Assembly that Act 403 of 1985 *was intended to apply only when the marital relationship between the parents and child has been severed by death, divorce or legal separation; that Act 403 contains langauge which may result in confusion regarding its applicability; that this Act eliminates that confusing langauge; and that this Act should be given immediate effect in order to prevent a misinterpretation of the law to the detriment of children. . . .* [Emphasis added.]

The 1987 Act, which has not been amended, limits those grandparents who may be granted a right of visitation to situations where the *"relationship between the parents of the child has been severed by death, divorce, or legal separation."* Ark. Code Ann. § 9-13-103 (Repl. 1991) (emphasis added). Thus, the specific statute governing visitation by grandparents does not provide for a right of visitation by grandparents of a child born out of wedlock. This should end this case. However, because the majority opinion holds there is another statute in the "paternity" section that gives grandparents the right of visitation with a child born out of wedlock, it is necessary to go further.

### Chapter 10 — Paternity Statutes

The majority opinion states that a statute in Title 9, Chapter 10, governs visitation and allows visitation by grandparents of a child born out of wedlock. The history of the statute cited by the majority opinion, Ark. Code Ann. § 9-10-109 (Repl. 1991), conclusively shows that it is a statute dealing with the general subject of support of children born out of wedlock and in no way was intended to overrule the above quoted specific statutes on visitation. At common law the amount of child support could not be modified in cases in which the child was born out of wedlock. Thus, the General Assembly passed Act 71 of 1979. It provided: "Section 1.   County Courts may at any time, enlarge, diminish or vacate any order or judgment awarding an allowance for child support in bastardy proceedings." This statute was amended by Act 988 of 1985 to "Provide That Support Collection Techniques Mandated by P.L. 98-378 (Child Support Enforcement Amendments of 1984) be Available in Bastardy Actions; and for Other

Purposes." The statute relied upon in the majority opinion, Ark. Code Ann. § 9-10-109 (Repl. 1991), is a general statute dealing with child *support* and not *visitation*. It is titled "Child Support following finding of paternity." The majority opinion quotes only a part of the statute, but it is so clearly a statute dealing with the general subject of child support that it is quoted in full:

(a)    Subsequent to the finding by the chancery court that the defendant is the father of the child, the court shall follow the same guidelines, procedures, and requirements as set forth in the laws of this state applicable to child support orders and judgments entered by the chancery court as if it were a case involving a child born of a marriage in awarding custody, visitation, setting amounts of support costs and attorneys' fees, and directing payments through the clerk of the court.

(b)(1)    All orders directing payments through the registry of the court shall set forth a fee to be paid by the noncustodial parent or obligated spouse in the amount of one dollar ($1.00) for each payment or accumulation of payments received or an annual fee to be set by the court of not more than twenty-four dollars ($24.00) per year, but not both a fee per payment or payments and an annual fee. . If the court sets an annual fee, it shall be collected from the noncustodial parent or obligated spouse at the time of the first support payment and during the anniversary month of the entry of the order each year thereafter until no children remain minor and the support obligation is extinguished.

(2)    The clerk, upon direction from the court and as an alternative to collecting the annual fee during the anniversary month each year after entry of the order, may prorate the first fee collected at the time of the first payment of support under the order to the number of months remaining in the calendar year and thereafter collect all fees as provided in this subsection during the month of January of each year.

(3)    Payments made for this fee shall be made on an annual basis in the form of a check or money order payable to the clerk of the court or other such legal tender which the clerk may accept. This fee payment shall be separate and

apart from the support payment, and under no circumstances shall the support payment be reduced to fulfill the payment of this fee.

(4) All moneys collected by the clerk as a fee as provided in this subsection shall be used by the clerk's office to offset administrative costs as a result of this subchapter and to purchase, maintain, and operate an automated data system for use in administering the requirements of this subchapter. All fees collected under this subsection shall be paid into the county treasury to the credit of the fund to be known as the "Support Collection Costs Fund". Moneys deposited in this fund shall be appropriated for the uses designated in this subdivision by the quorum court upon the request of the clerk of the court.

(c) The clerk of the court shall maintain accurate records of all support orders and payments under this section.

(d) The clerk may accept the support payment in any form of cash or commercial paper, including personal check, and may require that the custodial parent or nonobligated spouse be named as payee thereon.

Ark. Code Ann. § 9-10-109 (Repl. 1991).

Every reader of this opinion can see that the above statute is a statute generally involving child support. It does not specify who, or which party, shall have a right of visitation. The majority seizes upon the word "visitation" in subparagraph (a) and construes it to mean that visitation is provided for grandchildren born out of wedlock as though the parents had been married. Such is a contorted construction. The proper construction should be that the chancery court shall "follow the same guidelines, procedures, and requirements" in setting custody, visitation, and attorney fees as if it "were a case involving a child born of a marriage." This part of the statute refers to the amount of support, the amount of attorney fees, and the times of visitation. It does not specify who, or which party, should be granted the right of visitation. This is confirmed by another statute set out only five statutes later, Ark. Code Ann. § 9-10-114. This later statute, which the majority opinion chooses to ignore, provides

only for visitation *by the father* in the case of a child born out of wedlock. It provides: "When any chancery court in this state determines the paternity of a child and orders the father to make periodic payments for support of the child, the court may also grant reasonable visitation rights to *the father* and may issue such orders as may be necessary to enforce the visitation rights." [Emphasis added.]

The majority opinion violates the rules of statutory construction to conclude that the child *support* statute, cited by the majority and quoted above, repeals the specific statutes on *visitation*. The statute that specifically provides for grandparent visitation, Ark. Code Ann. § 9-13-103 (Repl. 1991), is clear, as is the statute specifically providing for visitation in cases involving a child born out of wedlock. "In statutory construction where specific expressions conflict with general expressions, the rule is to give greater effect to the specific expression." *Valley Nat'l Bank v. Stroud*, 289 Ark. 284, 286, 711 S.W.2d 785, 786 (1986). The statute providing for visitation in cases of children born out of wedlock states that the father may have visitation. The doctrine *espressio unius est exclusio alterius*, which means the expression of one thing is the exclusion of the other, applies. Finally, even if one thought that in someway the child support statute conflicted with the specific statutes on visitation, as the majority must, the later statute, the grandparent visitation statute, Ark. Code Ann. § 9-13-103 (Repl. 1991), enacted in 1987, must control. As originally set out, *it is the statute that expressly rejected visitation for cases such as the one at bar.*

It should be obvious to everyone reading the majority opinion and this dissent that the majority simply think that grandparents ought to have a right of visitation. Our cases give two straight answers to that thought. First, the statutes are clear, and "When a provision is left out of a statute, either by design or mistake of the Legislature, the courts have no power to supply it. To do so would be to legislate and not to construe." *Hodges* v. *Dawdy*, 104 Ark. 583, 597, 149 S.W. 656, 661 (1912) (quoting *Hobbs* v. *McClean*, 117 U.S. 567 (1886)). Second, the General Assembly made a valid policy choice. Under the statute that it passed, young mothers who do not have money to contest court cases would not be subject to two suits for visitation. Under the precedent set by this case, those young mothers are now subject

first to a suit by the father, and then, if the father loses, a second suit by the paternal grandparents. As a group, young mothers of children born out of wedlock ordinarily do not have the money to contest visitation cases. The General Assembly had a choice concerning suits against this group and made it. In addition, cases in which the parties are never married and a child is born, there is likely to be hostility, not only among the parents, but among the grandparents as well. Again, the General Assembly chose not to encourage that hostility, and the majority opinion goes directly against that policy. In a comparable case eleven years ago we wrote:

> Such difficulties are unlikely when all those concerned remain on amicable terms with one another, but problems and tensions must be faced and resolved when bitterness arises, as here. It was unquestionably within the province of the legislature to decide that the reasons favoring the solidarity of the adoptive family outweigh those favoring grandparents and other blood kin who are related to the child through the deceased parent. *The final decision as to the state's policy lay with the legislature, not with the courts. . . .*

*Wilson* v. *Wallace*, 274 Ark. 48, 50, 622 S.W.2d 164, 166 (1981) (emphasis added). The power to make public policy should still be with the General Assembly. Accordingly, I dissent.

Hays, J., joins this dissent.