## Lois SUSTER *v.* ARKANSAS DEPARTMENT OF HUMAN SERVICES

92-1214                                              858 S.W.2d 122

Supreme Court of Arkansas
Opinion delivered July 19, 1993

*John Putman*, for appellant.

*G. Keith Griffith*, for appellee.

Jack Holt, Jr., Chief Justice. The issue before us is the effect of a court ordered termination of the parental rights of a mother to her child in relation to the rights of the child's maternal grandmother to visitation and custody of the child. We hold that the grandmother's rights are derivative of her daughter's rights, and for this reason the grandmother has no standing to intervene in the adoption proceedings of her granddaughter.

Lori Hughes Cook and Carl Mounts were married from 1980 to 1984 and had one daughter, Crystal Mounts, in 1982. Thereafter, they were divorced, and Lori Hughes Cook entered into a common law marriage in Ohio with Mike Hughes during which Lori Hughes Cook took Mr. Hughes' last name and the two had one child, Loretta Hughes. They later moved to Harrison, Arkansas.

In 1990, the Arkansas Department of Human Services (DHS) filed a petition to obtain emergency custody of Crystal on the basis that she was "dependent-neglected." The petition and affidavits filed by DHS contained allegations that Lori Hughes Cook neglected Crystal and physically abused her. The trial court placed Crystal in the care and custody of DHS' Division of Children and Family Services, who in turn placed her in a foster care program except for a brief period when she was temporarily returned to her mother.

After conducting several periodic reviews as mandated by Ark. Code Ann. § 9-27-337 (Repl. 1991), the court entertained a petition on September 17, 1991 to terminate Lori Hughes Cook's parental rights. She was present and represented by counsel. Thereafter, the chancellor entered an order terminating Ms. Cook's parental rights to Crystal under Ark. Code Ann. § 9-27-341 (Repl. 1991). The order stated "all parties agree that there is clear and convincing evidence to show that an order should be entered terminating Lori Hughes Cook's parental rights and granting custody with power to consent to adoption to the Arkansas Department of Human Services," that it was in the best interest of the child to be placed for adoption, and that the case

would be reviewed next on March 10, 1992.

In February, 1992, while incarcerated in the Arkansas Department of Correction, Lori Hughes Cook filed a petition to set aside the order terminating her parental rights on the basis that she had consented to the termination only because she understood that her former common law husband, Mike Hughes, would be allowed by DHS to adopt Crystal.

Five days before the March 1992 review hearing, Crystal's maternal grandmother, Lois Suster, along with Crystal's three maternal uncles, filed a motion to intervene in the cause of action on the basis that they had a significant interest relating to Lori Hughes Cook's parental rights because her parental rights directly affected their ability as relatives to contact, communicate with, visit, and have a relationship with Crystal. The Susters, residents of Ohio, also filed a pleading in support of the motion to intervene as required by Ark. R. Civ. P. 24 in which they sought to obtain custody of Crystal or, at least, visitation rights.

As a result of the March review hearing, the chancellor entered an order on July 7, 1992 denying Mrs. Cook's petition to set aside the order terminating her parental rights and denying Mrs. Suster's motion to intervene stating in pertinent part:

> That the maternal Grandmother of Crystal Mounts, Lois Suster, has filed a motion in this action alleging that by an Order of this Court on May 28, 1991, she was granted visitation rights with her Granddaughter, Crystal Mounts and asking that she be allowed to intervene in this matter. Mrs. Suster has also filed a petition alleging that she has not been allowed to visit with Crystal Mounts since September 17, 1991, and asking for custody of Crystal Mounts or, in the alternative, the right to have visitation with Crystal Mounts.
>
> . . . .
>
> Lois Suster's argument that she can still receive visitation rights after Lori Hughes (Cook's) parental rights have been terminated because the parents of Crystal Mounts are divorced is without merit. Lois Suster's visitation rights were contingent upon her daughter Lori Hughes Cook having rights. Mrs. Suster could only take

through her daughter, a parent of the child, and that parent's rights have been terminated.

In addition, Lois Suster's argument that she was entitled to due process notice of the termination proceedings or an opportunity to be heard in those proceedings is without merit as she was not a party nor an intervenor. The rights of visitation that were granted to Mrs. Suster were upon her visiting the State of Arkansas and were to be decided in the future if she decided to make the trip to Arkansas. Those rights of visitation were not based upon a regular pattern of visitation or rights that were incumbent to a party or an intervenor. The Court is denying Lois Suster's motion to intervene.

■ Mrs. Suster, individually, appeals both the trial court's finding that she no longer had visitation rights due to termination of Lori Hughes Cook's parental rights and the trial court's denial of her motion to intervene as of right pursuant to Ark. R. Civ. P. 24(a). The denial of an intervention of right based on a claimed interest in the litigation which may be unprotected constitutes an appealable order under Ark. R. App. P. 2(a)(2). *Cupples Farms Partnership* v. *Forrest City Prod. Credit,* 310 Ark. 597, 839 S.W.2d 187 (1992).

Mrs. Suster argues that the trial court erred by denying her motion to intervene pursuant to this rule since her grandparent's rights "are personal to her" and "no other parties appear to be adequately representing Mrs. Suster's interest." She relies on Ark. Code Ann. § 9-13-103 (Repl. 1991) as her authority in that it provides her the right to have visitation by virtue of being a grandparent; however, she is wrong in this regard.

■ A reading of this code section reveals that it does not give Mrs. Suster an unconditional right to intervene, but merely a means of petitioning for visitation which she has done. Simply put, this code provision does not vest grandparents with an absolute right to visitation or intervention.

Mrs. Suster's reliance on *Quarles* v. *French,* 272 Ark. 51, 611 S.W.2d 757 (1981) is also misplaced. In *Quarles,* two children's paternal grandparents were permitted to intervene in adoption proceedings concerning the grandchildren following

their father's death on the basis that the grandparents had stood in loco parentis to the children and previously had court ordered visitation as provided by statute. Here, the focal point is the intervention of a grandparent following a termination of parental rights by court order not following the death of a parent. Thus, *Quarles* is of no import.

DHS argues that Ark. Code Ann. § 9-13-103 (Repl. 1991) should not be interpreted to include grandparents where the intervening parental rights have been terminated. DHS quotes *Poe* v. *Case*, 263 Ark. 488, 565 S.W.2d 612 (1978), a case in which grandparents sought visitation rights where their grandchild had been adopted by a third party:

> To create new, enforceable rights in grandparents could lead to results that would burden rather than enhance the welfare of children. Certainly prospective adopted parents would be less inclined to assume that worthwhile role. Of paramount importance in this case, as in all adoption and custody matters, is what is in the best interest of the child.

DHS cites our recent decision of *Rudolph* v. *Floyd*, 309 Ark. 514, 832 S.W.2d 219 (1992) for further support, where we quoted with approval a law review article which stated, "Grand-parent rights, to the extent they may be said to exist, are derivative of their son's or daughter's parental rights . . . Because a grandparent's rights are only derivative, they may be contingent upon the establishment of paternity or maternity and are subject to divestment when parental rights are terminated." Chauncey Brummer & Era Looney, *Grandparent Rights in Custody, Adoption, and Visitation Cases*, 39 Ark. L. Rev. 259, 261 (1985).

Although Crystal has not yet been placed for permanent adoption by a third party, we also look to our statutes which detail the effect of termination of parental rights and adoption by a third party:

> An order terminating the relationship between parent and juvenile divests the parent and the juvenile of all legal rights, powers, and obligations with respect to each other, including the rights to withhold consent to adoption,

except the right of the juvenile to inherit from the parent, which is terminated only by a final order of adoption.

Ark. Code Ann. § 9-27-341(c)(1) (Repl. 1991).

A final decree of adoption and an interlocutory decree of adoption which has become final, whether issued by a court of this state or of any other place, have the following effect as to matters within the jurisdiction or before a court of this state . . . to relieve the natural parents of the adopted individual of all parental rights and responsibilities, and *to terminate all legal relationships between the adopted individual and his relatives, including his natural parents, so that the adopted individual thereafter is a stranger to his former relatives for all purposes* including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the individual by name or by some designation not based on a parent and child or blood relationship

Ark. Code Ann. § 9-9-215(a)(1) (Repl. 1991)(emphasis added).

These statutes point to a public policy which, in determining what is in the child's best interest, favors a complete severing of the ties between a child and its biological family when he is placed for adoption. We have said it is "unquestionably within the province of the legislature to decide that the reasons favoring the solidarity of the adoptive family outweigh those favoring grandparents and other blood kin who are related to the child through the deceased parent." *Wilson* v. *Wallace,* 274 Ark. 48, 50, 622 S.W.2d 164, 166 (1981). Our legislature has declined to adopt another rule, so we will not here.

Our case law and statutory law support DHS' position. We hold, accordingly, that Mrs. Suster's rights as a grandparent were derivative of her daughter's parental rights and as a result were terminated when her daughter's parental rights were terminated, and that she does not have a recognized interest in the subject matter of this litigation to warrant intervention as a matter of right. For these reasons, we affirm the trial court's

denial of her motion to intervene.