205 So.2d 363 (1967)
Grace M. FLORO, Appellant,
v.
Zeb N. PARKER and Betty E. Parker, His Wife, Appellees.
No. 67-46.
District Court of Appeal of Florida. Second District.
December 13, 1967.
Rehearing Denied January 11, 1968.
*364 David C. Holloman, Arcadia, for appellant.
Lewis E. Purvis, Arcadia, for appellees.
PIERCE, Judge.
This is an appeal by Grace M. Floro, plaintiff below, from an adverse summary final judgment entered by the DeSoto County Circuit Court in an unlawful entry and detainer proceeding filed by plaintiff against Zeb N. Parker and Betty E. Parker, his wife, defendants therein.
Plaintiff filed her complaint in statutory form, F.S. Sec. 82.06 F.S.A., alleging that defendants had "unlawfully turned her out of, and unlawfully and without her consent withhold from her possession", certain described real estate. The complaint prayed for "restitution of possession and her damages".
Defendants Parker answered that, as owners of the "record fee simple title" to the property, they had the right of possession, asserting that "the ultimate question to be determined * * * is whether the defendants are the owners of said land" and that "the substantial question involved * * is one of title". Attached and made a part of the answer was an itemized deraignment of their title from the issuance of the original patent from the Government in February, 1880, down to January, 1966, when defendants took title.
The property in controversy is an oblongshaped tract measuring approximately 190 feet north-south, and about 1240 feet east-west, comprising an estimated 4.21 acres, in the extreme southwest corner of Section 2, Township 38 South, Range 25 East. Immediately to the South is property in Section 11, same Township and Range, which admittedly belonged to plaintiff. Adjacent to the north of the disputed tract is a nine foot paved county road known as the Brown Road, extending east-west almost the entire length of the tract.
The parties filed reciprocal motions for summary judgment, with supporting proofs. Plaintiff's motion was denied. Defendants' motion was granted and the cause dismissed, the Court holding there was "no genuine issue of any material fact". Plaintiff has appealed. The question here is whether there was any disputed fact engendered by the proofs submitted that raised a genuine issue bearing upon the determination of the case. We think there was and therefore reverse.
In her affidavit plaintiff stated that in 1952, when she and her late husband purchased the land in Section 11, the Brown Road was represented as her north boundary; that there was an orange grove on the property extending northerly to the Brown Road, which included the disputed tract; that she and her husband went into possession of the land and grove, cared for it, and received all profits therefrom; that in January, 1966, defendant Parker informed her he was the owner of the "other side" of the Brown Road but that "the property line was in error"; that on Sunday afternoon, January 16, 1966, when she returned home she found that Parker had erected a fence that cut off the disputed tract from the rest of her property; that "No Trespassing" signs and also Florida Citrus Mutual signs previously placed on the north boundary of the grove at the Brown Road had been removed; that she did not consent to Parker putting up the fence or taking possession of that portion of the property.
Also supporting plaintiff was the affidavit of David Browder, who stated that he with his then brother sold the property to the Floros in September, 1952; that from 1942 the Browders had exclusive possession of the property, including the disputed *365 tract adjacent to the Brown Road, upon which they maintained an orange grove, fertilized and otherwise took care of it and received the profits therefrom; that when they sold in 1952 they delivered possession to the Floros up to the Brown Road as the North boundary.
Zeb N. Parker's affidavit in his behalf stated that defendants were the "record fee simple owners" of the 80 acres immediately north of plaintiff's Section 11 land, having acquired it by deed from Joshua Creek Corporation on January 3, 1966; that he advised plaintiff he had acquired the property to her north but did not know the exact boundary lines and that he intended to have the property surveyed and to construct a fence; that after he "had determined * * * the boundary lines" he erected the fence before referred to; that he took possession as the holder of the "record fee simple title"; and denied there were any "No Trespassing" signs on any portion of the property.
Defendant Parker, in a deposition, stated that prior to January, 1966, he was totally unfamiliar with the property; that when he acquired the 80 acre tract "a fence ran along the north side of the Brown Road"; that directly to the south of the road was "an orange grove"; that when he made the purchase he was told by the grantor's representative "the line ran south of the Brown Road, he didn't know exactly where"; that after he "got the survey", he never did "show her [Mrs. Floro] the line"[1]; that he "did not take possession of the property south of the Brown Road until the fence was constructed * * * after the survey", and therefore "for a period in there, [he] didn't have possession".
The affidavit of James H. (Pat) Hansel stated that he was present in early January, 1966, when Parker advised Mrs. Floro he had purchased the adjoining property "and that he intended to enclose the same with a fence but that he did not know the exact location of his boundary lines"; that she told Parker she had had her property surveyed and "knew the location of her boundary lines"; that no part of her property adjoining Parker's "was at that time enclosed in any manner, neither were there any `No Trespassing' signs located on the property in controversy".
This was the substance of all the proofs offered on the motions.
The action of forcible entry and unlawful detainer is one of the most misunderstood  or more accurately, one of the least understood  proceedings in the field of remedial law. This is perhaps due, in large part, to the fact that the embryo lawyer, when first exposed to this type action in law school, is told that unlawful entry and detainer may be brought "to regain possession of real property", but is told in the next breath that "title is not involved" and cannot be inquired into. He begins to wonder why, if possession is the issue, title is of no consequence; reflecting in his naivete that he always understood that possession is dependent upon title.
But he usually remains quiet and asks no questions for fear of "displaying his ignorance". And unfortunately, the mystery is seldom cleared up for him. So he usually goes through his career of "lawyering" without ever really understanding the basic theory of the proceeding. The saving grace is that he will not perhaps have over one or two such cases during his entire practice, and he will invariably try to "settle" these without having to come to grips in Court.
Actually the explanation is very simple. The issues in a suit for forcible entry and detainer as here, are (1) whether the plaintiff was in peaceful possession of the premises, and (2) whether the defendant forcibly took and retained such possession from him. 36A C.J.S. Forcible Entry & Detainer § 50, page 1013, et seq. And the *366 reason title does not come into the case is because it is immaterial whether plaintiff had the legal right of possession or not. He may have been devoid of any muniments of title, or even be a trespasser. So long as he had peaceful prior possession and had been forcibly put out of that possession by defendant, the action would lie.
The action was not a common law remedy; in fact, it was in derogation of the common law. It is, and always has been, a statutory remedy. It had its genesis in the English statute of 5 Rich. II, c. 8, a strictly criminal statute, which denounced as a crime the practice of subverting actual possession by the employment of force, even though the possession of the one forcibly displaced was itself wrongful. The reason for the original statute, as well as the later English statutes, was to prevent breaches of the peace which arose when one person would enter upon the land of another and, frequently by sheer physical power, oust the other from peaceful, albeit wrongful, possession. This was unusually prevalent in cases where the relationship of landlord and tenant prevailed and the tenant would merely continue to retain the premises after his lawful occupancy.
It was to allay such public disturbances that the early English statutes were passed. Others were the statute of 15 Rich. II, c. 2, providing for a summary conviction, for a forcible entry, by a justice of the peace merely upon a view, "the justice being authorized to go upon the premises, remove the force, and convict, fine and imprison the wrongdoer"; the statute of 8 Hen. VI, c. 9, which enlarged the remedy to cases where there was both a forcible entry and a detainer, and also where there was a peaceful entry followed by a forcible detainer; and the statutes of 31 Eliz. c. 11 and 21 Jac. 1, c. 15, which provided for restitution of possession to the injured party. An interesting, as well as instructive, discussion of the historical development of the entry and detainer actions is contained in Mr. Justice Ellis's opinion in Goffin v. McCall, 1926, 91 Fla. 514, 108 So. 556.
Our present Florida statutes, F.S. Sec. 82.01 F.S.A. et seq. are almost identical with the early English statutes. F.S. Sec. 82.03 F.S.A. reads as follows:
"82.03 Remedy declared for unlawful entry and forcible entry.
If any person shall enter * * * into lands * * * where entry is not given by law, * * * the party turned out or deprived of possession * * * by such forcible entry, by whatever right or title he held such possession * * * shall at any time within three years thereafter be entitled to the summary remedy herein provided."
Then follow F.S. Secs. 82.06, F.S.A. et seq., which provide a single summary remedy, including a statutory form of complaint, for either forcible entry or unlawful detainer or a combination of the two. This statutory form was followed in this case.
And while F.S. Sec. 82.05 F.S.A, says that "no question of title, but only a right of possession and of damages, shall be involved in the action", the Supreme Court has construed the language "right of possession" therein to mean "the present right of possession, and not the ultimate right. It has reference to the right of possession to be determined under the issues made by the pleadings prescribed by the statute and not the ultimate right of possession as might be determined by a suit in ejectment", or in the nature of a "trespass to try title to land". (Emphasis supplied). Florida Athletic and Health Club v. Royce, 1948, 160 Fla. 27, 33 So.2d 222; Perry Naval Stores Co. v. Griffin, 1909, 57 Fla. 133, 49 So. 554. Such ultimate right of possession, so determinable in a separate proceeding at law, would not be prejudiced by any judgment rendered in the unlawful entry or detainer action, under F.S. Sec. 82.17 F.S.A., which provides:
"No judgment rendered [in an entry and detainer action] either for plaintiff *367 or defendant shall bar any action of trespass for injury to the property, or ejectment, between the same parties respecting the same property in question; nor shall any verdict be held conclusive of the facts therein found, in any action of trespass or ejectment."
The entry and detainer action is designed to compel the party out of actual possession, whether the real owner and as such entitled to the ultimate right of possession, or not, to respect the actual present possession of another, wrongful though it might be, by requiring him, in order to obtain the possession he claims to be his, to resort to legal channels, such as a suit for ejectment, or trespass to try title, or removal of tennant proceedings under Sec. 83.20 et seq. Hewitt v. State ex rel. Palmer, 1933, 108 Fla. 335, 146 So. 578; Florida Athletic and Health Club v. Royce, supra; Goffin v. McCall, supra; Adelhelm v. Dougherty, 1937, 129 Fla. 680, 176 So. 775; State ex rel Rich v. Ward, 1939, 135 Fla. 885, 185 So. 846.
In Goffin v. McCall, supra, beginning on page 558 of 108 So., is the following:
"It is said that the first English statute (5 Rich. 11) created one of the great differences which exist in our law between being in possession and the being out of possession of land, and which gives rise to the old saying that possession is nine points of the law. See Beddall v. Maitland, L.R., 17 Ch.Div. 174; 2 M.A.L. 58; Newton v. Harland, 1 M. & Gr. 644.
The condition which the English statutes sought to improve was the subversion of actual possession by the employment of force. The person who disturbed the actual possession of another by a forcible or otherwise unlawful entry was deemed to be guilty of a crime. The procedure rested upon actual possession by the injured party. That possession the law protected against the forcible or otherwise unlawful entry of * * * the person claiming the right of entry. The owner of the title or a trespasser who had gone into possession peaceably could be the wronged party; the circumstance of whether he was the wrongdoer or the injured party depending upon the fact of actual possession of the one being overturned by the forcible or unlawful act of the other.

* * * * * *
The civil remedy of forcible entry and detainer which was evolved from the English statutes, making what is now the basis of such remedy a crime, merely has the effect of securing to the person who was in actual possession before the eviction a remedy against the wrongdoer. There is no purpose evident in the language of the Florida statutes to change or add to the conditions which under the English statutes constituted a crime, but the purpose was merely to transform that which was a crime into a private wrong or tort. A civil action was merely substituted for the criminal one.
* * * * * *
There must be actual possession of the whole or a part of the premises; the subjection of the premises to the exclusive will and control of the plaintiff by means of the exercise of visible and notorious acts of dominion over them. Such possession need not be evidenced by actual residence, continuous presence, or the erection of fences, but there must exist some visible act or evidence of continuous control; such possession as would ripen if continued for the necessary period into legal title against the true owner if there was such outstanding title.
One cannot enumerate all the evidences of actual possession." (Emphasis supplied).
In the Florida Athletic & Health Club case, supra, the essential ingredients of the forcible entry and detainer proceeding are set forth as follows:
"The elements of plaintiffs' actions are: (1) The plaintiffs must have been *368 in possession; (2) must be ousted of possession; (3) the defendants withhold possession from the plaintiffs and without their consent; (4) the plaintiffs were deprived of possession within three years of the filing of the suit."
So much for the legal principles governing the instant action. We revert now to the facts before the Circuit Judge when defendants Parker moved for summary judgment. The plaintiff had occupied the disputed tract openly, peaceably, and notoriously since 1952. Her predecessors in title had likewise occupied it for ten years immediately before that time. During all these years plaintiff and her predecessors had maintained, fertilized, and cultivated an orange grove thereon and received the profits therefrom. There were "No Trespassing" signs and also Florida Citrus Mutual signs within the disputed tract. There was an east-west fence bordering the Brown Road. These facts are all attested by the affidavits of plaintiff and the previous owner, Browder.
It is true that defendant's deposition and affidavits refer to the disputed tract as containing "an abandoned grove" and also deny there were any such signs within the area but these were some of the "genuine issues" which were raised by the proofs submitted and which should have been settled by a jury. And it cannot be gainsaid that such issues were not as to "a material fact", because they bore upon plaintiff's present possession, and came directly within what the Supreme Court indicated as "evidences of actual possession" in Goffin v. McCall.
The whole defense of the Parkers was obviously predicated upon the claim of ownership of the disputed tract, derived from the deed from Joshua Creek Corporation just twelve days before they put up the fence and took over possession.[2] But the crucial elements were present possession of the disputed strip by Mrs. Floro and the ouster of such possession by erection of the fence. Plaintiff Floro and her witness Browder deposed exclusive and peaceful possession of the disputed strip for almost a quarter century. Defendant Parker disclaimed ownership prior to January 3, 1966, and admitted plaintiff's possession of the disputed strip from January 3rd to January 16, 1966, when the survey was made and the fence put up. This was the date when plaintiff was surreptitiously put out of the premises in controversy.
In Holl v. Talcott, Fla. 1966, 191 So.2d 40, text 43, discussing entry of summary judgment, the Supreme Court said:
"As this court and other appellate courts have repeatedly held, the burden of proving the absence of a genuine issue of material fact is upon the moving party. Until it is determined that the movant has successfully met this burden, the opposing party is under no obligation to show that issues do remain to be tried. Humphrys v. Jarrell, [Fla.App., 104 So.2d 404]; Matarese v. Leesburg Elks Club, [Fla.App., 171 So.2d 606]; and Harvey Building, Inc. v. Haley, Fla. 1965, 175 So.2d 780."
In the case sub judice, not only did defendants fail to meet the burden imposed on them in Holl, but plaintiff went forward and proved affirmatively that a genuine issue of a material fact did exist. In such state of the case, summary judgment should not have been entered upon either of the motions. It was a typical case for trial by jury.
The judgment appealed from is reversed.
LILES, C.J., and HOBSON, J., concur.
NOTES
[1] The "survey" was never produced.
[2] Even so, they produced no deeds or surveys to the Court. However, such omission is unimportant because the whole subject matter of title and ownership was immaterial to this form of action.