DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CSC SERVICEWORKS, INC.,** a Delaware corporation,
Appellant,

v.

**BOCA BAYOU CONDOMINIUM ASSOCIATION, INC.,** a Florida
corporation and **COMMERCIAL LAUNDRIES, INC.,** a Florida
corporation,
Appellees.

No. 4D17-0974

[March 7, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; David E. French, Judge; L.T. Case No. 502016CA011456XXXXMBAJ.

Monica Tirado of Reiner & Reiner, P.A., Miami, for appellant.

Lilliana M. Farinas-Sabogal and Howard Perl of Becker & Poliakoff, P.A., Coral Gables, for appellee Boca Bayou Condominium Association, Inc., a Florida corporation.

Rodney W. Bryson II, West Palm Beach, for appellee Commercial Laundries, Inc., a Florida corporation.

DAMOORGIAN, J.

Appellant, CSC Serviceworks, Inc., appeals a final judgment entered in favor of Boca Bayou Condominium Association, Inc. ("the Association") and Commercial Laundries, Inc. ("Commercial") (collectively "the Defendants") in its unlawful detainer lawsuit. For the reasons discussed below, we affirm the final judgment.

By way of background, Appellant, a self-service laundry equipment provider, entered into a seven year written laundry space lease ("the Lease") with the Association in September of 2000. The Lease provided that Appellant would furnish and install commercial washers and dryers in each of the Association's twenty-six laundry rooms. The Lease also included a right of first refusal clause which survived for one year after the

expiration of the Lease. Prior to the expiration of the initial Lease, the parties elected to extend the Lease for an additional seven years. When the extended written Lease expired in October of 2014, Appellant continued to occupy the laundry rooms and pay the Association rent on a month-to-month basis. This arrangement continued for nearly two years before the Association began receiving various complaints from the residents.

In 2016, the Association began to solicit bids for the lease of the laundry rooms. Appellant actively participated in the bidding process; however, the Association ultimately selected Commercial as its new laundry service provider. On August 16, 2016, the Association sent Appellant a letter canceling the Lease and asking when it could expect Appellant to remove its machines. Shortly thereafter, on August 25, 2016, Commercial also contacted Appellant and inquired as to when the machines would be removed. Appellant's representative responded that she would "schedule something." The following day, Commercial emailed the same representative advising that its machines would be arriving on September 21, 2016 and asking that Appellant remove its machines by September 27, 2016. Appellant's representative did not respond to the email. On August 31, 2016, Commercial again contacted Appellant's representative to schedule a definite removal date. The representative responded that she would contact an installation technician about scheduling something and would follow-up after she made some progress. Appellant's representative never followed-up as promised.

During a September 19, 2016 meeting with the Association and Commercial, Appellant's representative informed the parties that Appellant intended to enforce its right of first refusal. That same day, the Association's attorney emailed Appellant advising that the right of refusal had been rejected. When Commercial arrived to install its machines as scheduled on September 27, 2016, Appellant's machines were still connected to the laundry rooms' water and electric hook-ups. With the Association's approval, Commercial disconnected each one of Appellant's machines and moved them aside. At no point in time were Appellant's machines removed from the laundry rooms and none of the machines were damaged. Appellant was never denied access to the unlocked laundry rooms nor to its machines. On October 3, 2016, the Association sent Appellant a pre-suit demand letter advising that if Appellant did not remove its machines from the laundry rooms within fifteen days, the Association would commence a tenant eviction action. Appellant complied and removed its machines before any formal eviction proceeding was commenced.

Appellant thereafter sued the Defendants, alleging causes of actions for breach of the lease agreement, tortious interference, conversion, and unlawful detainer.[1] After Appellant successfully moved to sever its claims and try the unlawful detainer claim separately, the matter proceeded to a jury trial. At the close of evidence, Appellant moved for a directed verdict, arguing that by disconnecting its machines without legal process or Appellant's knowledge and consent, the Defendants undisputedly ousted Appellant of possession of the laundry rooms. The court denied the motion and the jury ultimately rendered a verdict in favor of the Defendants. This appeal follows.

Appellant argues that the court erred in denying its motion for directed verdict because the undisputed evidence at trial established that while Appellant was in possession of the laundry rooms, the Defendants disconnected its machines and, for all intents and purposes, retook possession of the laundry rooms without legal process. For much of the same reason, Appellant also argues that the jury's verdict is not supported by competent substantial evidence. The Defendants counter that the court correctly denied the motion because Appellant's machines were never physically removed from the laundry rooms and the act of "disconnecting" is not equivalent to "dispossessing." We agree with the Defendants.

Section 82.02, Florida Statutes, provides that "[n]o person who enters without consent in a peaceable, easy and open manner into any lands or tenements shall hold them afterwards against the consent of the party entitled to possession." § 82.02(1), Fla. Stat. (2017).

> The entry and detainer action is designed to compel the party out of actual possession, whether the real owner and as such entitled to the Ultimate right of possession, or not, to respect the actual Present possession of another, wrongful though it might be, by requiring him, in order to obtain the possession he claims to be his, to resort to legal channels, such as a suit for ejectment, or trespass to try title, or removal of tennant proceedings under Sec. 83.20 et seq.

*Floro v. Parker*, 205 So. 2d 363, 367 (Fla. 2d DCA 1967) (citations omitted). The salient questions in an unlawful detainer action, therefore, are whether: (1) plaintiff was in peaceful possession of the property; (2) plaintiff was ousted of actual possession of the property; and (3) defendant withheld possession of the property from plaintiff without consent or legal process. *See id.*

---

[1] Only the unlawful detainer action is before this Court.

3

We hold that the Defendants' act of disconnecting the machines and moving them to the other side of the laundry rooms did not have the effect of ousting Appellant of its possession of the laundry rooms as contemplated under the unlawful detainer statute. Any connection rights that Appellant may have had were related to its leasehold interest which, as acknowledged by Appellant, was not at issue in the unlawful detainer action. *See* § 82.05, Fla. Stat. (2017) (providing that "[n]o question of title, but only right of possession and damages, is involved in the action" of unlawful detainer); *Se. Fid. Ins. Co. v. Berman*, 231 So. 2d 249, 251 (Fla. 3d DCA 1970) (reiterating that "[t]he gist of an action for unlawful detainer is the unlawful withholding of possession by the defendant," and holding that an unlawful detainer action "is not the proper remedy where it is obvious to the trial judge that plaintiff is substantially seeking an adjudication of title").

Appellant nonetheless maintains that the holding in *R. Bodden Coin-Op Laundry, Inc. v. Brandychase Condominium Ass'n*, 557 So. 2d 663 (Fla. 2d DCA 1990), which involved a dispute between a laundry service provider and a condo association regarding the possession of laundry rooms, supports reversal in this case. We disagree. Unlike in the instant case, *Bodden* involved a situation where an association *removed* the plaintiff's machines from the laundry rooms, transported them to a warehouse, and refused to release the machines to the plaintiff for a period of time. *Id.* at 664. The holding in *Bodden*, therefore, is not applicable to the facts in this case as Appellant's machines were not removed from the laundry rooms.

Our holding is further supported by the historical context within which the unlawful detainer action originated. As explained by the court in *Floro*, the unlawful detainer action has its origins in an English criminal statute:

> which denounced as a crime the practice of subverting actual possession by the employment of force, even though the possession of the one forcibly displaced was itself wrongful. The reason for the original statute, as well as the later English statutes, was to prevent breaches of the peace which arose when one person would enter upon the land of another and, frequently by sheer physical power, oust the other from peaceful, albeit wrongful, possession.

205 So. 2d at 366. In other words, unlawful detainer actions are, and have always been, about actual physical dispossession of real property, not constructive or useful dispossession.

Accordingly, we hold that the trial court correctly denied the motion for directed verdict because the evidence did not support the plaintiff's claim for unlawful detainer.

*Affirmed.*

W<small>ARNER</small> and M<small>AY</small>, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**