DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CSC SERVICEWORKS, INC.,**
Appellant,

v.

**BOCA BAYOU CONDOMINIUM ASSOCIATION, INC.,**
Appellee.

No. 4D19-3962

[December 2, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Scott R. Kerner, Judge; L.T. Case No. 502016CA011456.

David P. Reiner, II of Reiner & Reiner, P.A., Miami, for appellant.

Kenneth E. Zeilberger of Backer Aboud Poliakoff & Foelster, LLP, Boca Raton, for appellee.

GERBER, J.

The former lessee appeals from the circuit court's final order granting the association's motion for summary judgment on the former lessee's actions for wrongful eviction, breach of lease, and declaratory relief. The former lessee argues the circuit court erred in basing its summary judgment on three findings: (1) the doctrines of res judicata and collateral estoppel (arising from a prior jury verdict in an unlawful detainer action) barred the instant actions; (2) the former lessee waived its unlawful eviction claim by voluntarily surrendering the premises; and (3) the lease expired before the former lessee attempted to exercise its right of first refusal to meet a new lessee's offer to lease the premises. Although we agree with the former lessee that the circuit court's first and second findings were improper, we conclude the circuit court's third finding was proper. Thus, we affirm the summary judgment.

We present this opinion in three parts:
1. The former lessee's first appeal;
2. The proceedings after the first appeal; and
3. This appeal.

## 1. *The Former Lessee's First Appeal*

This appeal is the second time in which the parties' dispute has reached our court. *See generally CSC Serviceworks, Inc. v. Boca Bayou Condo. Ass'n, Inc.*, 240 So. 3d 12 (Fla. 4th DCA 2018) ("*CSC I*"). *CSC I* sets forth the case's factual background and procedural history, to which we will add as necessary for this appeal.

In 2000, the former lessee entered into a seven-year written laundry space lease with the association. *Id.* at 13. The lease provided the former lessee would furnish and install commercial washers and dryers in each of the association's twenty-six laundry rooms. *Id.*

Pertinent to this appeal, the lease included a right of first refusal clause providing:

> That should [the association] upon the expiration of the final Lease term, including renewals, elect to[] Lease the premises to any other person or entity similarly engaged in the business of operating laundry Equipment or purchase Equipment, then [the former lessee] shall have the right of first refusal to meet any bona fide executed contract offer to let the premises, or to sell equipment, under the identical terms and conditions of such offer and this provision shall survive for one (1) year after the expiration of the Lease.

The lease also contained a clause providing: "[T]his Lease incorporates all oral promises between the parties, [and] can only be amended in writing signed by both parties ...."

Before the initial seven-year lease term expired, the association and the former lessee extended the lease for an additional seven years. *Id.*

In 2014, when the extended lease expired, the association and the former lessee orally agreed the former lessee could continue to occupy the laundry rooms and pay rent to the association on a month-to-month basis. *Id.* This arrangement continued for nearly two years before the association began receiving various complaints from the residents. *Id.*

In 2016, the association began to solicit bids for the lease of the laundry rooms. *Id.* The former lessee actively participated in the bidding process; however, the association ultimately selected a new lessee as its new laundry service provider. *Id.*

On August 16, 2016, the association sent the former lessee a letter canceling the lease and asking when it could expect the former lessee to remove its machines. *Id.* Shortly thereafter, on August 25, 2016, the new lessee also contacted the former lessee and inquired as to when the machines would be removed. *Id.* The former lessee's representative responded that she would "schedule something." *Id.* The following day, the new lessee e-mailed the same representative advising that its machines would be arriving on September 21, 2016 and asking that the former lessee remove its machines by September 27, 2016. *Id.* The former lessee's representative did not respond to the e-mail. *Id.*

On August 31, 2016, the new lessee again contacted the former lessee's representative to schedule a definite removal date. *Id.* The representative responded that she would contact an installation technician about scheduling something and would follow up after she made some progress. *Id.* The former lessee's representative never followed up as promised. *Id.*

On September 19, 2016, the former lessee notified the association and the new lessee that the former lessee intended to enforce its right of first refusal. *Id.* The former lessee provided the association with a copy of the written lease which the association had entered into with the new lessee, but upon which the former lessee had written its name over the new lessee's name.

The association did not sign the former lessee's purported lease. Instead, later that day, the association notified the former lessee that the association had rejected the former lessee's belated attempt to exercise its right of first refusal. *Id.*

On September 27, 2016, when the new lessee arrived to install its machines as scheduled, the former lessee's machines were still connected to the laundry rooms' utility lines. *Id.* With the association's approval, the new lessee disconnected each one of the former lessee's machines and moved them aside within the laundry rooms. *Id.*

On October 3, 2016, the association sent the former lessee a pre-suit demand letter advising that if the former lessee did not remove its machines from the laundry rooms within fifteen days, the association would file a tenant eviction action. *Id.* The former lessee removed its machines before any eviction action was filed. *Id.*

The former lessee thereafter sued the association and the new lessee, alleging causes of actions for breach of the lease agreement, tortious interference, conversion, and unlawful detainer. *Id.* The former lessee

3

successfully moved to sever its unlawful detainer claim for an immediate jury trial before the other three actions would proceed. *Id.* at 13-14.

At that jury trial, the former lessee moved for a directed verdict at the close of the evidence, arguing that the association, by directing the new lessee to disconnect the former lessee's machines without legal process or the former lessee's consent, unlawfully ousted the former lessee from the laundry rooms. *Id.* at 14. The circuit court denied the directed verdict motion, and the jury ultimately rendered a verdict in the association's and the new lessee's favor. *Id.*

On appeal, the former lessee argued the circuit court erred in denying the directed verdict motion, because the undisputed trial evidence established the association directed the new lessee to disconnect the former lessee's machines and, "for all intents and purposes, retook possession of the laundry rooms without legal process." *Id.* The association and the new lessee responded the circuit court correctly denied the directed verdict motion because the former lessee's "machines were never physically removed from the laundry rooms and the act of 'disconnecting' is not equivalent to 'dispossessing.'" *Id.*

We agreed with the association and the new lessee and thus affirmed. *Id.* We reasoned, in pertinent part:

> [T]he [association's and new lessee's] act of disconnecting the machines and moving them to the other side of the laundry rooms did not have the effect of ousting [the former lessee] of its possession of the laundry rooms as contemplated under the unlawful detainer statute. Any connection rights that [the former lessee] may have had were related to its leasehold interest which, as acknowledged by [the former lessee], was not at issue in the unlawful detainer action. *See* § 82.05, Fla. Stat. (2017) (providing that "[n]o question of title, but only right of possession and damages, is involved in the action" of unlawful detainer); *Se. Fid. Ins. Co. v. Berman*, 231 So. 2d 249, 251 (Fla. 3d DCA 1970) (reiterating that "[t]he gist of an action for unlawful detainer is the unlawful withholding of possession by the defendant," and holding that an unlawful detainer action "is not the proper remedy where it is obvious to the trial judge that plaintiff is substantially seeking an adjudication of title").

*Id.*

4

## 2. *The Proceedings After the First Appeal*

After the first appeal, the parties resumed litigating the former lessee's other claims.  The former lessee was granted leave to file an amended complaint.  The amended complaint alleged three counts against the association:  (1) wrongful eviction, (2) breach of lease, and (3) declaratory judgment.

On the wrongful eviction count, the former lessee alleged the association, by directing the new lessee to disconnect and move the former lessee's laundry equipment, violated section 83.21, Florida Statutes (2016), which requires the filing of an eviction action, and instead "wrongfully resorted to self-help."

On the breach of lease count, the former lessee alleged the association, by directing the new lessee to disconnect and move the former lessee's laundry equipment, violated the following lease provisions:

> [The association] agrees that [the former lessee] shall have the right of quiet enjoyment of the demised premises, including unobstructed access to and from until the expiration of the Lease term or any extension thereof. ....
>
> ....
>
> [The association] shall not move or remove, disconnect or tamper with the [the former lessee's] machines or restrict access for any reason whatsoever.  [The association] further agrees that it will not permit any other ... laundry machines ... on the premises, ....  A breach of the covenants contained in this Paragraph ... shall be deemed to constitute Constructive Eviction ....

On the declaratory judgment count, the former lessee alleged it was in doubt as to its rights, requiring the circuit court's intervention, because:

> 37. [The former lessee] asserts that it has present and continuing vested rights under the express terms of the [2016] Lease ... which [the former lessee] accepted by properly exercising its [right of first refusal].  ...
>
> 38.  The Association has asserted ... that no such [right of first refusal] survived the expiration of the initial Lease term,

and that the Association has no obligation to perform under the [2016] Lease with [the former lessee].

The association's answer denied the former lessee's material allegations and raised several affirmative defenses. The association later filed a motion for summary judgment based on three of those defenses, arguing in pertinent part: (1) the previous lease expired by its own terms before the former lessee attempted to exercise its right of first refusal; (2) the former lessee waived its unlawful eviction claim when it voluntarily removed its machines from the premises; and (3) the former lessee was barred from seeking relief based on the doctrines of res judicata and collateral estoppel arising from the prior adverse jury verdict on the unlawful detainer action.

After a hearing (before a different judge than the one who conducted the unlawful detainer trial), the circuit court entered its final order granting the association's summary judgment motion on the three grounds raises above.

### 3. *This Appeal*

This appeal followed. The former lessee argues the circuit court erred in three respects: (1) by finding res judicata and collateral estoppel arising from the unlawful detainer jury verdict barred the remaining claims; (2) by finding the former lessee waived its unlawful eviction claim by voluntarily surrendering the premises; and (3) by finding the lease expired before the former lessee attempted to exercise its right of first refusal to meet the new lessee's offer to lease the premises.

Although we agree with the former lessee that the circuit court's first and second findings were improper, we conclude the circuit court's third finding was proper. We address each finding in turn.

#### a. **Res Judicata and Collateral Estoppel**

"A [circuit] court's ruling concerning the application of res judicata and collateral estoppel is … reviewed de novo." *Aronowitz v. Home Diagnostics, Inc.*, 174 So. 3d 1062, 1065 (Fla. 4th DCA 2015).

> [U]nder res adjudicata a final decree of judgment bars a subsequent suit between the same parties based upon the same cause of action and is conclusive as to all matters germane thereto that were or could have been raised, while [collateral estoppel] is applicable where the two causes of

6

action are different, in which case the judgment in the first suit only estops the parties from litigating in the second suit issues—that is to say points and questions—common to both causes of action and which were actually adjudicated in the prior litigation.

*Gordon v. Gordon*, 59 So. 2d 40, 44 (Fla. 1952).

"For res judicata to apply, there must be four identities: (1) identity of thing sued for, (2) identity of cause of action, (3) identity of persons and parties to the action, and (4) identity of quality or capacity of persons for or against whom the claim is made." *Leahy v. Batmasian*, 960 So. 2d 14, 17 (Fla. 4th DCA 2007).

Here, the circuit court erred in finding res judicata barred the former lessee's instant actions. The first two necessary identities, of the "thing sued for," and of the "cause of action," were lacking. The prior action was for unlawful detainer, and the "thing sued for" in the prior action was the former lessee's possessory right to access the laundry rooms. The instant actions are for wrongful eviction, breach of lease, and declaratory judgment, and the "thing sued for" in the instant actions is the former lessee's alleged contractual right to maintain its machines in the laundry rooms. As we held in *CSC I*: "Any connection rights that [the former lessee] may have had were related to its leasehold interest which, as acknowledged by [the former lessee], *was not at issue in the unlawful detainer action.*" 240 So. 3d at 14 (emphasis added).

Similarly, the circuit court erred in finding collateral estoppel barred the former lessee's instant actions. "For [collateral estoppel] to apply, the following [five] elements must be met: (1) an identical issue must be presented in a prior proceeding; (2) the issue must have been a critical and necessary part of the prior determination; (3) there must have been a full and fair opportunity to litigate the issue; (4) the parties in the two proceedings must be identical; and (5) the issues must have been actually litigated." *Provident Life & Accident Ins. Co. v. Genovese*, 138 So. 3d 474, 477 (Fla. 4th DCA 2014).

Here, the prior action examined whether the association had infringed upon the lessee's possessory right to access the laundry rooms. The instant actions presented different issues, those being whether the association wrongfully evicted the former lessee and breached the parties' lease by having the former lessee's machines disconnected.

7

### b. **Waiver**

The circuit court also erred in finding the former lessee waived its unlawful eviction claim by voluntarily surrendering the premises.

Because the facts upon which the circuit court based its finding that the former lessee waived its claims were undisputed, our review of that finding is de novo. *Cf. Truly Nolen of Am., Inc. v. King Cole Condo. Ass'n*, 143 So. 3d 1015, 1017 (Fla. 3d DCA 2014) ("The only issue before us on appeal is whether [appellant] waived its right to compel arbitration – a determination we make de novo because the underlying facts are undisputed.").

"A wrongfully evicted tenant may bring an action against the landlord for damages." *LK Grp. Holding Co. v. Spurrier Investments, Inc.*, 110 So. 3d 511, 511-12 (Fla. 4th DCA 2013). "In order to be actionable, the eviction must be 'wrongful or unlawful.'" *Id.* at 512 (citation omitted). One type of "unlawful" eviction occurs when the landlord exercises "self-help" to evict the tenant. *See Sheradsky v. Basadre*, 452 So. 2d 599, 603 (Fla. 3d DCA 1984) ("The record indicates that [the lessee] did have a valid claim for wrongful eviction ... because the purchasers of the apartment complex unlawfully resorted to self-help to remove the [lessee's] machines in violation of Section 83.21, Florida Statutes ....").

However, "[a] party may waive any right to which [that party] is legally entitled, whether secured by contract, conferred by statute, or guaranteed by the Constitution." *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 97 (Fla. 2013). As we held in *LeNeve v. Via South Florida, L.L.C.*, 908 So. 2d 530 (Fla. 4th DCA 2005):

> Waiver is the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right. ... [T]hree circumstances give rise to a waiver: (1) the existence of a right which may be waived; (2) actual or constructive knowledge of the right; and (3) the intent to relinquish the right. Proof of these elements may be express[] or implied from conduct or acts that lead a party to believe a right has been waived.

*Id.* at 535 (internal citations and quotation marks omitted).

Here, the former lessee may have had a valid unlawful eviction claim. Section 83.05(2), Florida Statutes (2016), provides only three methods by which a landlord may recover possession of rented premises:

(a) In an action for possession under s. 83.20, or other civil action in which the issue of right of possession is determined;

(b) When the tenant has surrendered possession of the rented premises to the landlord; or

(c) When the tenant has abandoned the rented premises.

§ 83.05(2), Fla. Stat. (2016).

The association, rather than filing eviction proceedings as section 83.05(2)(a) permitted, instead effected a "self-help" eviction when it directed the new lessee to disconnect the former lessee's machines and replace them with its own. As the former lessee argued in the circuit court: "[T]he [association's] wrongful act of instructing [the new lessee] to disconnect [the former lessee's] equipment and render it useless for the purpose the lease intended, constituted wrongful eviction."

Further, the former lessee did not waive that wrongful eviction claim when, in response to the association's pre-suit demand letter to remove its machines from the laundry rooms, the former lessee did so. By that time, the association already had accomplished its "self-help" eviction by having directed the new lessee to disconnect the former lessee's machines and replace them with its own. No facts exist to support the association's claim that the former lessee, by removing its disconnected machines, intended to relinquish its right to pursue a wrongful eviction claim. Rather, the record indicates the only reason why the former lessee removed its disconnected machines was to protect those machines from the possibility of damage. Thus, the circuit court erred in treating that action as the former lessee's waiver of its wrongful eviction claim.

Despite the circuit court improperly finding the former lessee waived its wrongful eviction claim, that error was harmless. The wrongful eviction claim appears to have sought damages for the future monetary income which the former lessee lost as a result of the association's termination of the former lessee's right to the exclusive and quiet use, possession and enjoyment and access to the laundry rooms. However, as the next section explains, the lease had expired before the association had directed the new lessee to disconnect the former lessee's machines.

When the extended lease expired in 2014, the former lessee became a month-to-month tenant at will, per the parties' oral agreement. *See* § 83.04, Fla. Stat. (2016) ("When any tenancy created by an instrument in

writing, the term of which is limited, has expired and the tenant holds over in the possession of said premises without renewing the lease by some further instrument in writing then such holding over shall be construed to be a tenancy at sufferance."); § 83.01, Fla. Stat. (2016) ("Any lease of lands and tenements, or either, made shall be deemed and held to be a tenancy at will unless it shall be in writing signed by the lessor. Such tenancy shall be from year to year, or quarter to quarter, or month to month, or week to week, to be determined by the periods at which the rent is payable."). Thus, when the association sent the former lessee a letter canceling the lease, the tenancy terminated fifteen days later. *See* § 83.03(3), Fla. Stat. (2016) ("A tenancy at will may be terminated by either party giving notice as follows: … Where the tenancy is from month to month, by giving not less than 15 days' notice prior to the end of any monthly period[.]"). As a result, by the time the association had directed the new lessee to disconnect the former lessee's machines, the former lessee's tenancy had terminated, and the former lessee was no longer entitled to possession of the laundry rooms nor the ability to operate its machines for its benefit.

### c. Lease Expiration

Because the circuit court interpreted the lease to find that the lease expired before the former lessee attempted to exercise its right of first refusal (and before the association had directed the new lessee to disconnect the former lessee's machines), our review of that finding is de novo. *See Jackson v. The Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013) ("[A] matter of contract interpretation … is a question of law subject to de novo review.").

Although our review is de novo, we adopt the circuit court's reasoning supporting its finding on this issue:

> [I]t is undisputed that the written Lease originally entered into by the parties in 2000, expired by its own terms in October 2014. The parties did not execute any other written amendments to the Lease, as required by section C.3 of the Lease. The parties merely orally agreed that the [former lessee] could continue to occupy the leased premises on a month-to-month basis. The oral month-to-month arrangement continued until August 16, 2016, on which date the Association served [the former lessee] with a written notice of cancellation of the oral month-to-month arrangement. Pursuant to Florida Statute Chapter 83, oral leases are terminable at will, as long as written notice of termination is

served by either party to the oral Lease. See Fla. Stat. § 83.03. It is undisputed that the Association provided written notice of the termination of the oral Lease.

To the extent [the former lessee] relies on its right of first refusal to claim that it somehow had the right to remain in possession, the [c]ourt disagrees. As noted herein, section 3.1 of the Lease provided that the [former lessee's] right of first refusal expired "… one year after the termination of the Lease". Here, the Lease expired on October 30, 2014, and there were no written addenda to the Lease. Consequently, pursuant to section 3.1, any right of first refusal expired on October 30, 2015. Therefore, … the [former lessee's] attempt to first exercise its right of first refusal on September 19, 2016, was untimely, and thus unenforceable.

Finally … once the written Lease terminated, the option terminated as well. *See*[,] *e.g.*[,] *Douglass v. Jones*, 422 So. 2d 352 (Fla. 5th DCA 1982) (where [l]ease was not timely renewed and the option to buy was, by its own terms, dependent upon the validity of the [l]ease, the option to buy terminated even though the terms of the [l]ease continued to define the ensuing month-to-month tenancy), and *Gower-Goheen Realty, Inc.*, 215 So. 2d 499 (Fla. [2d] DCA 1968) ([w]here lessee held over after termination of [l]ease, the [lease] terms … were still in effect, but the option to purchase was not exercisable).

In sum, [the former lessee] had absolutely no legal right to lawful possession. The written Lease had terminated, the right of first refusal had … expired by its own terms, the untimely made right of first refusal was rejected and written notice to vacate was provided. [The former lessee] thereafter … vacated the property after being advised that the Association would bring an eviction action.

### *Conclusion*

Based on the foregoing, although we have disagreed in part with the circuit court's first and second reasons for granting the association's motion for summary judgment, we have agreed with the circuit court's third reason for granting the association's motion for summary judgment. We also conclude the circuit court correctly denied the former lessee's motion for partial summary judgment on its wrongful eviction claim. We thus affirm the final judgment in the association's favor.

*Affirmed.*

WARNER and ARTAU, JJ., concur.

*       *       *

**Not final until disposition of timely filed motion for rehearing.**